IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CROWN PACKAGING TECHNOLOGY, INC., | ) ) ) | |
| Plaintiff, | ) ) | C.A. No. 05-892-JJF |
| v. | ) ) | |
| ALBERMARLE CORPORATION, | ) ) | |
| Defendant. | ) ) | |

**<u>OPENING BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS</u>**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Thomas C. Grimm (#1098)
Jerry C. Harris, Jr. (#4262)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
tcgefiling@mnat.com
jharris@mnat.com
*Attorneys for Defendant Albermarle Corporation*

OF COUNSEL:

Judith A. Powell
KILPATRICK STOCKTON LLP
1100 Peachtree Street Suite 2800
Atlanta, GA  30309-4530
(404) 815-6500

February 21, 2006

# TABLE OF CONTENTS

**Page(s)**

TABLE OF CITATIONS ............................................................................ ii

NATURE AND STAGE OF THE PROCEEDINGS ................................... 1

SUMMARY OF THE ARGUMENT ........................................................ 1

STATEMENT OF FACTS ...................................................................... 2

ARGUMENT.......................................................................................... 4

I.  THE COURT SHOULD DISMISS COUNTS I-VII OF THE
    COMPLAINT BECAUSE PLAINTIFF HAS FAILED TO
    STATE A CLAIM AGAINST ALBERMARLE. ................................ 4

    A.  CPT Has Not Sufficiently Pled That Albermarle Is Now
        Using Or Has Ever Used The Proposed Marks And,
        Thus, CPT Cannot Sustain A Claim For Trademark
        Infringement And Trademark Dilution Under The
        Lanham Act (Counts IV-V). ...................................................... 5

    B.  Use Of The Proposed Marks In Connection With Goods
        Is An Essential Element Of CPT's Common Law
        Trademark Infringement, And Unfair Competition
        Claims and CPT's State Law, Dilution, Deceptive Trade
        Practices, Unfair Competition And Counterfeiting
        Claims (Count 1-III, VI and VII). .............................................. 9

II. CPT's Slander of Title Claim is Barred by the Statute Of
    Limitations and is otherwise unSustainable As a Matter of Law......... 10

    A.  CPT's Slander Of Title Claim Is, In Part, Time Barred. .......... 11

    B.  Albermarle Was Justified As a Matter of Law In Making
        Statements Regarding Its Title To The Proposed Marks
        And Its Bona Fide Intent To Use The Proposed Marks............ 12

    C.  CPT Does Not Assert Cognizable Special Damages................ 13

III. This Court Lacks Subject Matter Jurisdiction Over CPT's
     Claims Based On Albermarle's Alleged Actions in Foreign
     Countries................................................................................. 14

CONCLUSION ...................................................................................... 16

## TABLE OF CITATIONS

**Page(s)**

**Cases**

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.,* 489 U.S. 141 (1989) ............................ 11

*Colquhoun v. Webber,* 684 A.2d 405 (Me. 1996)............................................. 15

*Faulkner Adver. Assoc. Inc. v. Nissan Motor Corp.,* 945 F.2d 694
(4th Cir. 1991)........................................................................... 8

*Huthwaite, Inc. v. Sunrise Assisted Living, Inc.,* 261 F. Supp. 2d 502 (E.D. Va.
2003) ....................................................................................... 6

*Kost v. Kozakewiez,* 1 F.3d 176 (3d Cir. 1993) *(quoting Mescall v. Burrus,* 603 F.
2d 1266 (7th Cir. 1979)...................................................... 5, 8

*Lithuanian Commerce Corp. v. Sara Lee Hosiery,* 47 F. Supp. 2d 523 (D.N.J.
1999), *aff'd in part, vacated in part on other grounds,* 248 F.3d 1130 (3d
Cir. 2000) ............................................................................. 17

*Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.,* 43 F.3d 922 (4th Cir.
1995) ...................................................................................... 6, 12

*Macia v. Microsoft Corp.,* 152 F. Supp .2d. 535 (D.Vt. 2001)......................... 13

*Mattel, Inc. v. MCA Records, Inc.,* 296 F.3d 894 (9th Cir. 2002) ..................... 6

*Opticians Ass'n of Am. v. Indep. Opticians of Am.,* 920 F.2d 187 (3d Cir. 1990)........... 10

*Ransom v. Marrazzo,* 848 F.2d 398 (3d Cir. 1988) ............................................. 5

*Read v. Baker,* 430 F. Supp. 472 (D.Del. 1977) ................................................. 13

*Storm Assoc. Inc., v. Texaco, Inc.,* 645 S.W.2d. 579 (Tex. Ct. App. 1982), aff'd
691 S.W.2d. (Tx. 1985) ......................................................... 15

*Timpanogos Highlands, Inc. v. Harper,* 544 P.2d 481 (Utah 1975)................................. 14

*Vanity Fair Mills v. T. Eaton Co.,* 234 F.2d 633 (2d Cir. 1956)...................................... 17

*Vogue Co. v. Thompson-Hudson Co.,* 300 Fed. 509 (6th Cir. 1924)................................. 11

*Young v. Joyce,* 351 A.2d 857 (Del. 1975) ....................................................... 11

*Zenger-Miller, Inc. v. Training Team, GmbH,* 757 F. Supp. 1062 (N.D. Cal. 1991)....... 17

iii.

**Statutes**                                                                    **Page(s)**

15 U.S.C. § 1051 ........................................................................................................ 9

15 U.S.C. § 1051(b)(1) ............................................................................................. 3

15 U.S.C. § 1051(d) ................................................................................................. 3

15 U.S.C. § 1114(1) ................................................................................................. 6

15 U.S.C. § 1125(c)(1)............................................................................................. 6

15 U.S.C. § 1127 ...................................................................................................... 7

28 U.S.C. §§ 1441 and 1446 .................................................................................... 1

37 C.F.R. § 2.101(b) ................................................................................................ 3

37 C.F.R. § 2.81 ................................................................................................ 14, 16

Del. Code Ann. tit. 6, § 2532 ................................................................................. 11

Del. Code Ann. tit. 6, § 3314(c) and (e) ............................................................... 11

Del.Code Ann. tit 10, § 8106 ................................................................................. 13

**Other Authorities**

5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1216
        (2d ed. 1990) (citing Del Sontro v. Cendant Corp. 223 F. Supp. 2d 563
        (D.N.J. 2002)) ....................................................................................................... 5

**Statutes**

J. Thomas McCarthy, McCarthy on Trademarks & Unfair Competition §
        24:70 (2005 ed.) (citing Fruit of Loom, Inc. v. Girouard, 994 F.2d 1359
        (9th Cir. 1993) ................................................................................................... 11

Restatement (Second) Torts § 623A, 624 (1977) ........................................... 14, 15

Restatement (Third) of Unfair Competition § 20, cmt. d (1995)....................... 12

**Rules**

*Fed. R. Civ. P. 11*............................................................................................... *8*

## NATURE AND STAGE OF THE PROCEEDINGS

On November 11, 2005, Crown Packaging Technology, Inc. ("CPT") filed a Complaint against Albermarle Corporation ("Albermarle") in Delaware's Court of Chancery alleging that Albermarle had engaged in: 1) trademark infringement and dilution in violation of the Lanham Act; 2) common law trademark infringement; 3) dilution in violation of the Delaware Trademark Act; 4) unfair and deceptive trade practices; 5) counterfeiting; 6) common law unfair competition; and 7) slander of title. On December 28, 2005, Albermarle removed the case to this Court pursuant to 28 U.S.C. §§ 1441 and 1446. Albermarle answered the complaint on January 7, 2006. On February 7, 2006, the parties participated in a telephone conference with the Court. During that conference, the Court granted Albermarle's request to file this Motion to Dismiss. This is Albermarle's Opening Brief In Support Of Its Motion To Dismiss.

## SUMMARY OF THE ARGUMENT

Each claim CPT asserts is based solely on Albermarle's filing of intent-to-use applications to register trademarks with the United States Patent and Trademark Office ("USPTO") and applications to register marks with administrative agencies in foreign countries. Neither the filing of intent-to-use applications in the U.S. nor the filing of foreign applications gives rise to any of the claims CPT asserts.

Indeed, seven of the eight claims CPT asserts require that Albermarle use the allegedly offending marks in connection with the sale of products or services. Yet, CPT has not identified even a single instance in which Albermarle has used the offending marks in connection with the sale or advertising of a product or service. Rather, it is clear from the facts alleged that Albermarle's only "offense" is having filed intent-to-use trademark applications. Accordingly,

the Court should dismiss Counts I – VII of the Complaint for failure to state a claim upon which relief can be granted.

CPT's slander of title claim (Count VIII) should likewise be dismissed. CPT purports to assert a claim based on alleged false statements made in Albermarle's intent-to-use applications in June 2002. A slander of title claim based on statements Albermarle made in its intent-to-use applications is time barred and must be dismissed. In addition, Albermarle was justified, as a matter of law, to make the statements about which CPT complains in its intent-to-use applications. Consequently, the Court should also dismiss Count VIII of the Compliant for this reason.

Lastly, CPT requests that this Court force Albermarle to provide an accounting of Albermarle's foreign trademark application and registration. A United States Court, however, lacks subject matter jurisdiction over administrative actions conducted solely in a foreign country. As such, the Court should deny the requested relief.

## STATEMENT OF FACTS

Albermarle, a subsidiary of Georgia Pacific Corporation, filed several intent-to-use applications to register the marks CROWNMARK, CROWNSOURCE, and designs (the "Proposed Marks") on June 19, 2002.[1] (Compl. ¶ 14.) As is often the case with intent-to-use applications, Albermarle subsequently voluntarily abandoned some of them. (*Id*. ¶¶ 14 and 15.) By August 2004, all of the still pending applications to register the Proposed Marks had been

---

[1]    Intent-to-use applications allow applicants to reserve a date of priority for marks that are not in use at the time of the application, but for which there is a bona fide intent to use at some later time. *See* 15 U.S.C. § 1051(b)(1). Such applications do not mature to registration until the applicant has filed with the USPTO a statement alleging use of the mark in commerce together with a specimen showing such use of the mark. *See* 15 U.S.C. § 1051(d).

approved by the United States Patent and Trademark Office ("USPTO") Examiners. (*See* Compl. 30)  Also, by August, 2004, all the approved Proposed Marks were published in the USPTO Official Gazette so that anyone claiming he would be damaged by their registration could oppose such registration.  (*See* Compl. 30); 37 C.F.R. § 2.101(b).  CPT opposed only two of the approved applications.  (Comp. ¶¶ 29 and 30.)  Albermarle decided not to contest either of those oppositions.  (*Id.*)

Currently, Albermarle has seventeen pending U. S. intent-to-use applications for the Proposed Marks.  (*Id*. ¶15.)  Each of these intent-to-use applications will mature to registration only if Albermarle uses the Proposed Marks in connection with the sale of the goods listed in the application and files a Statement of Use with the USPTO.  *See* 15 U.S.C. § 1051(d).  For each of these intent-to-use applications, Albermarle has requested extensions of time in which to file the Statement of Use.  (*Id*. ¶¶ 17 and 18.)

Having missed its opportunity to oppose registration of the currently pending Proposed Marks in the USPTO, CPT filed the instant action on November 11, 2005.  CPT seeks injunctive relief and damages for alleged: 1) trademark infringement and dilution pursuant to both the Federal Lanham Act and Delaware state law (Counts II, IV, V, and VI); 2) unfair and deceptive trade practices (Count I); 3) counterfeiting (Count III); 4) unfair competition (Count VII); and 5) slander of title (Count VIII).  CPT further requests that the Court require Albermarle to provide an accounting of each foreign registration or application to register the Proposed Marks.

CPT does not allege that Albermarle has used the Proposed Marks in commerce, and instead, writes at length about Albermarle "applying for" and "preparing to use" the Proposed Marks (compl. ¶¶ 34, 54 and 60), Albermarle's "scheme to use" the Proposed Mark (compl. ¶ 47), and Albermarle's "threatened use" of the Proposed Marks (compl. ¶¶ 39, 55, 56).  After a

two year investigation (*see* compl. ¶¶ 23, 25, and 27), CPT filed a twenty-one page complaint, comprised of sixty-two paragraphs, and did not cite to one single instance of Albermarle's actually having affixed any of the Proposed Marks to a product and selling or even offering such a product for sale.  In fact, as demonstrated by the Declaration of Emily Kellum Breslin, filed herewith, Albermarle is not now using, nor has it ever used, any of the CROWNMARK and CROWNSOURCE marks at issue in this case.  Declaration of Emily Kellum Breslin, dated February 16, 2006, ¶ 2 ("Breslin Decl.").

## ARGUMENT

### I.  THE COURT SHOULD DISMISS COUNTS I-VII OF THE COMPLAINT BECAUSE PLAINTIFF HAS FAILED TO STATE A CLAIM AGAINST ALBERMARLE.

The Court should dismiss Counts I-VII of the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure because CPT has failed to state a claim upon which relief can be granted.  The relevant question is whether "the *facts* alleged in the complaint, even if true, fail to support the ... claim."  *Ransom v. Marrazzo,* 848 F.2d 398, 401 (3d Cir. 1988) (emphasis added).  The pleader is required to "set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist."  5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1216 (2d ed. 1990) (*citing Del Sontro v. Cendant Corp.* 223 F. Supp. 2d 563 (D.N.J. 2002)).  Courts, however, "are not required to accept legal conclusions either alleged or inferred from the pleaded facts."  *Kost v. Kozakewiez,* 1 F.3d 176, 183 (3d Cir. 1993) (*quoting Mescall v. Burrus*, 603 F. 2d 1266, 1269 (7th Cir. 1979).

### A. CPT Has Not Sufficiently Pled That Albermarle Is Now Using Or Has Ever Used The Proposed Marks And, Thus, CPT Cannot Sustain A Claim For Trademark Infringement And Trademark Dilution Under The Lanham Act (Counts IV-V).

CPT has asserted both trademark infringement and trademark dilution pursuant to the Lanham Act. (Compl., Counts IV and V.) It is black letter law that there can be no trademark infringement without the defendant's use in commerce of the plaintiff's mark. 15 U.S.C. § 1114(1); *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 930 (4th Cir. 1995) (to establish a claim for trademark infringement, the plaintiff must show ownership of a valid, protectable mark and proof that the defendant's *use of the mark in commerce* is likely to cause confusion (emphasis added)). Similarly, a fundamental element of a claim for trademark dilution under the Lanham Act is the "commercial use in commerce of a mark or trade name" by the defendant. 15 U.S.C. § 1125(c)(1); *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 903 (9th Cir. 2002) (discussing the meaning of 'commercial use' requirement to prove dilution under the Lanham Act and stating, "its meaning seems clear: It refers to a use of a famous and distinctive mark to sell goods other than those produced or authorized by the mark's owner."); *Huthwaite, Inc. v. Sunrise Assisted Living, Inc.*, 261 F. Supp. 2d 502, 517 (E.D. Va. 2003) ("In practice, the 'commercial use' requirement is virtually synonymous with the 'in connection with the sale, offering for sale, distribution or advertising of goods and services' requirement; the latter essentially defines the former.").

The only "use" Albermarle has made of the Proposed Marks is in filing intent-to-use applications with the USPTO. (*See* Compl. ¶¶ 14-21 and 23; *see also* Breslin Decl. ¶ 2.) However, filing of intent-to-use applications is not use of the mark under the Lanham Act:

> [t]he term "use in commerce" means the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark. For purposes of this chapter, a mark shall be deemed to be in use in commerce—

> (1) on goods when—
>
> (A) it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale, and
>
> (B) the goods are sold or transported in commerce. . .

15 U.S.C. § 1127.

Accordingly, the Court should dismiss CPT's federal trademark infringement and dilution claims because the complaint does not allege that Albermarle has affixed any of the Proposed Marks to any product that it has sold or transported in commerce.  To the contrary, CPT effectively admits in the Complaint that, after two years of investigating Albermarle and the Proposed Marks, CPT has found no use in commerce of any of the Proposed Marks.  Specifically, CPT states:

> [u]pon information and belief, plaintiff will be able to demonstrate, after a reasonable opportunity for further investigation and discovery, that Albermarle is using its [Proposed Marks] in interstate commerce in connection with the marketing and sale of packaging products . . .

(Compl. ¶ 45; *See also* Compl. ¶¶ 42, 46-47 and 50-51.)  These statements alone demonstrate that CPT has not alleged the type of use required to sustain a federal trademark or dilution claim.

While CPT is permitted to allege facts based "on information and belief" pursuant to Rule 11 of the Federal Rules of Civil Procedure, the privilege of doing so is permitted only upon a reasonable belief formed *after* an appropriate inquiry.  *See* Fed. R. Civ. P. 11 advisory committee's note (making factual or legal allegations on information and belief "does not relieve litigants from the obligation to conduct an appropriate investigation into the facts that is reasonable under the circumstances; it is not a license to . . . make claims. . . without any factual basis or justification.").  Inquiry here would not support a reasonable belief that one could show

use.  This is not a case in which Albermarle's allegedly offending acts (and the acts necessary to give rise to a claim) could be conducted in secret.  To the contrary, were Albermarle selling goods under the Proposed Marks, it would be open and obvious.

CPT has had two years to investigate and gather information about Albermarle's use of the Proposed Marks.  (Compl. ¶ 23.)  It has found none.  This case, thus, does not present circumstances in which Rule 11 permits allegations upon "information and belief."  Accordingly, pleading "use" of the Proposed Marks based on information and belief should not save CPT's Lanham Act claims.  *See* Fed. R. Cir. P. 11 advisory committee's note ("if evidentiary support is not obtained after a reasonable opportunity for further investigation or discovery, the party has a duty not to persist with that contention.").

More importantly, CPT's statements that it will be able to prove Albermarle used the Proposed Marks in commerce after additional investigation is not a factual allegation, but rather a legal conclusion that is not supported by the facts asserted.  *See, e.g., Kost,* 1 F.3d at 184; *Faulkner Adver. Assoc. Inc. v. Nissan Motor Corp.*, 945 F.2d 694, 695 (4th Cir. 1991) ("[A] court cannot be shackled from granting a motion to dismiss merely because [a party] propounds a legal conclusion, where the defects of that conclusion are conspicuous from the facts asserted.").

Indeed, the facts that CPT alleges demonstrate that Albermarle has not used the Proposed Marks.  The complaint is replete with phrases respecting Albermarle's "threatened use," "preparing to use" and "scheme to use" the Proposed Marks.  (Compl at ¶¶ 34, 39, 47, 54 – 56 and 60.)  CPT further speaks at length about Albermarle's actions respecting its intent-to-use applications, and those allegations show no use has occurred.  Most notable is the following:

- "Albermarle has filed a series of requests for extension of time for filing a Statement of Use with the PTO, as recently as August 2005." (Compl. ¶ 16.)[2]

- "In filing requests for extension of its applications for the [Proposed Marks], Albermarle represented to the PTO that Albermarle was *engaged in research and development in preparation for using* the [Proposed Marks] in conjunction with the various products described in its applications." (Compl. ¶ 17) (emphasis added)

Here, CPT acknowledges that Albermarle is still engaged "in preparation for using" the Proposed Marks, which is wholly inconsistent with Albermarle having used the Proposed Marks.

Aside from CPT's legal conclusions about use, the Complaint only contains facts about Albermarle's applications - nothing more. CPT had an opportunity to object to the registration of the Proposed Marks in the USPTO, but neglected to do so. The Lanham Act does not give CPT a remedy unless and until Albermarle uses the Proposed Marks in commerce. Albermarle has not (*see* Answer, Affirmative Defenses; Breslin Decl. ¶ 2); and CPT does not sufficiently allege any facts showing that it has.

---

[2]     The PTO requires an intent-to-use applicant to file a Statement of Use, verifying that the marks that are the subject of the application have been used in connection with the goods identified in the application. *See* 15 U.S.C. § 1051. The statement of use must be accompanied by a specimen showing the mark in use in connection with products. Extensions of time are granted to allow an applicant time to begin using the mark. *Id.*

9.

B.    **Use Of The Proposed Marks In Connection With Goods Is An Essential Element Of CPT's Common Law Trademark Infringement, And Unfair Competition Claims and CPT's State Law, Dilution, Deceptive Trade Practices, Unfair Competition And Counterfeiting Claims (Count 1-III, VI and VII).**

The Court should also dismiss CPT's state law claims set forth in Counts 1-III and VII because each claim requires the exact same use element as required under the Lanham Act.

Specifically, CPT's common law trademark infringement claim requires that the "defendant's *use of the marks to identify goods* or services is likely to create confusion concerning the origin of the goods or services."  *Opticians Ass'n of Am. v. Indep. Opticians of Am.,* 920 F.2d 187, 192 (3d Cir. 1990) (emphasis added). Likewise, the purpose of the Delaware Deceptive Trade Practices Act (which codifies CPT's claim for common law unfair competition, *see Young v. Joyce*, 351 A.2d 857 (Del. 1975)), is to stop offending uses of trademarks or trade names that are likely to confuse consumers as to the source of goods or services.  *See* Del. Code Ann. tit. 6, § 2532; *see also Bonito Boats, Inc. v. Thunder Craft Boats, Inc*., 489 U.S. 141, 157 (1989) ("The law of unfair competition has its roots in the common-law tort of deceit; its general concern is with protecting consumers from confusion as to source."); *Vogue Co. v. Thompson-Hudson Co*., 300 Fed. 509, 512 (6th Cir. 1924) (passing off has been said to be "a convenient name for the doctrine that no one should be allowed to sell his goods as those of another"). Similarly, CPT's counterfeiting claim requires that a product either bear the alleged "counterfeited" trademark or the counterfeited trademark be affixed to a product.  *See* Del. Code Ann. tit. 6, § 3314(c) and (e).  Even CPT's dilution claim requires some kind of mental association in the reasonable *buyer's* mind between the two parties' *uses* of the mark.  *See* J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS & UNFAIR COMPETITION § 24:70 (2005 ed.) (*citing Fruit of Loom, Inc. v. Girouard*, 994 F.2d 1359 (9th Cir. 1993)).  Buyers do not patrol the

United States trademark register or the Official Gazette; buyers look for marks in connection with goods or services. Thus, applying to register a mark does not, by definition, constitute dilution.

Further, with respect to CPT's trademark infringement and unfair and deceptive trade practices/unfair competition claims, CPT has not alleged cognizable likelihood of confusion. CPT alleges that "Albermarle's application and registration" of the Proposed Marks is "likely to cause confusion and misunderstanding among consumers familiar" with CPT's marks. (*See* Compl. ¶ 33). Trademark infringement and unfair and deceptive trade practice/unfair competition, however, require a showing that potential purchasers of a product or service are likely to be confused as to the source of that product or service. Restatement (Third) of Unfair Competition § 20, cmt. d (1995) ("The term 'likelihood of confusion' has long been used to describe the standard of liability for trademark infringement in actions at common law and under federal and state trademark and unfair competition statutes."); *Lone Star*, 43 F.3d at 930. Confusion as to the applicant of an intent-to-use application or even a trademark registration is not the consumer confusion for which trademark law or the Delaware Trade Practices Act provides a remedy.

Accordingly, the Court should dismiss Counts I-III, VI and VII.

## II.    CPT'S SLANDER OF TITLE CLAIM IS BARRED BY THE STATUTE OF LIMITATIONS AND IS OTHERWISE UNSUSTAINABLE AS A MATTER OF LAW.

CPT purports to assert a claim for slander of title against Albermarle based on alleged false statements in Albermarle's intent-to-use applications for the Proposed Marks and in its requests for extensions of time to file Statements of Use with the USPTO. Albermarle did not make any false statements. Nevertheless, even if it had, CPT has failed to state a claim for which

relief can be granted because: 1) its slander of title claim based on statements in Albermarle's intent-to-use applications is time barred; 2) Albermarle was justified in making statements in its requests for extension of time; and 3) CPT failed to assert cognizable "special damages."

**A.    CPT's Slander Of Title Claim Is, In Part, Time Barred.**

CPT's slander of title claim based on any statement in Albermarle's intent to use applications is time barred. Delaware law requires that slander of title claims be brought within three years from the date the cause of action accrues. *See* Del.Code Ann. tit 10, § 8106. A slander action accrues when the alleged false statement is published. *See, e.g. Read v. Baker,* 430 F. Supp. 472 (D.Del. 1977) (holding that actions to recover damages for libel and slander accrue from the date the alleged libelous statement was published or the slanderous statement made); *see also Macia v. Microsoft Corp.*, 152 F. Supp .2d. 535, 551 (D.Vt. 2001) (applying state's slander and libel statute of limitations in an action for slander of title).

Albermarle filed each of the intent-to-use applications to register the Proposed Marks with the USPTO on June 19, 2002. (Compl. ¶ 14). Thus, CPT's slander of title claim based on statements made in Albermarle's intent-to-use applications expired June 19, 2005. CPT did not bring this action until November 11, 2005, nearly five (5) months too late. *See Macia*, 152 F. Supp. 2d. at 551 (dismissing slander of title claim based on alleged false statements in an intent-to-use trademark application brought more than two years after the applications were filed). CPT's slander of title claim is, therefore, time barred with respect to statements made in Albermarle's intent-to-use applications.

12.

**B.    Albermarle Was Justified As a Matter of Law In Making Statements Regarding Its Title To The Proposed Marks And Its Bona Fide Intent To Use The Proposed Marks.**

Slander of title requires proof of: 1) a false statement that disparages plaintiff's title in property; 2) published by the defendant; 3) without justification or privilege; 4) made with malice; and 5) causing special damages to the plaintiff.  *See* Restatement (Second) Torts § 623A, 624 (1977).  Because the USPTO, the administrative body that determines registrability of trademarks, approved Albermarle's intent-to-use applications for the Proposed Marks, Albermarle was justified in making statements related to its own title in those marks.  Thus, CPT cannot sustain a slander of title claim.

The USPTO issued Albermarle a notice of allowance for each of the Proposed Marks, signifying that Albermarle had met the requirements for registration, except actual use of the marks in commerce.  *See* 37 CFR 2.81.  Notably, the USPTO allowed Albermarle's applications despite CPT's registrations for the very marks whose title CPT now claims Albermarle slandered.   No one, not even CPT, opposed any of the currently pending intent-to-use applications to register the Proposed Marks.  Thus, Albermarle was justified in believing it had a right to register the Proposed Marks, and any statements it made thereafter in its requests for extension of time were based on that belief.  *See Timpanogos Highlands, Inc. v. Harper*, 544 P.2d 481, 486 (Utah 1975) ("It is our opinion that the trial court was justified in concluding that plaintiff had sufficient basis for believing that it had rights under the contract, that there is no foundation upon which it could be found that it willfully and knowingly recorded a false or fraudulent instrument for the purpose of slandering the defendants' title."); *see also Storm Assoc. Inc., v. Texaco, Inc.*, 645 S.W.2d. 579, 588 (Tex. Ct. App. 1982), *aff'd* 691 S.W.2d. (Tx. 1985) ("A claim of title does not constitute malice where the claim is made under color of title or upon

reasonable belief that parties have title to the property acquired.").

**C.    CPT Does Not Assert Cognizable Special Damages.**

A slander of title claim requires that 'special damages' be *caused* by the publication of a false statement. *See* Restatement (Second) Torts § 623A, 624 (1977). The costs of litigating the slander of title action do not constitute such special damages. *Colquhoun v. Webber*, 684 A.2d 405, 410-11 (Me. 1996) (the cost of litigating the action for slander of title itself is not "special damages"). CPT's asserted 'special damages' boil down to the expenses incurred in pursuing its slander of title claim, and thus are not cognizable special damages.

CPT asserts that it has incurred "expenses in identifying and responding to Albermarle's applications" and the expense of "opposing Albermarle's trademark applications." Nothing Albermarle stated in any request for extension of time caused any expenses CPT incurred "opposing Albermarle's trademark applications " or "identifying and responding to Albermarle's applications." Logically, CPT had identified Albermarle's applications before it identified any statements in Albermarle's requests for extensions of time. Thus, it is impossible to attribute any cost associated with identifying the applications to the statements in the requests for extension of time.

Moreover, any expenses CPT incurred in opposing Albermarle's applications were not *caused* by statements in Albermarle's requests for extensions of time because Albermarle had not filed a request for extension of time for the applications that CPT opposed.[3]

---

[3]    Only after a Notice of Allowance has been issued will an intent-to-use applicant be required to submit a statement of use or to file requests for extensions of time to do so. 37 C.F.R. § 2.81. If an opposition is sustained, a Notice of Allowance never issues, which was the case with the two applications CPT opposed.

CPT has failed to allege cognizable special damages, thereby necessitating the dismissal of Count VIII.

## III.    THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER CPT'S CLAIMS BASED ON ALBERMARLE'S ALLEGED ACTIONS IN FOREIGN COUNTRIES.

CPT has requested the Court to order "Albermarle to provide an accounting of all of Albermarle's trademark applications and registrations of the [Proposed Marks] in foreign countries."   A United States Court, however, lacks subject matter jurisdiction to grant the requested relief.

While CPT did not expressly so state, it essentially asks this Court to force Albermarle to provide information about administrative filings made solely outside the United States and beyond this Court's jurisdiction.  Although courts have extended the Lanham Act beyond U.S. borders to enjoin certain actions related to trademark *use*, extending application of the statute to address foreign administrative filings is wholly without basis.  The Lanham Act's reach can only be extended when there is a finding that the defendant's conduct has had a substantial effect on United States commerce, there is no valid trademark registration in the foreign country, and there is no conflict with trademark rights conferred by that foreign country.  *See Vanity Fair Mills v. T. Eaton Co.*, 234 F.2d 633 (2d Cir. 1956).

It is axiomatic that the mere filing of trademark applications abroad has no effect on United States commerce.  More importantly, CPT did not allege Albermarle's filing of foreign applications or foreign registrations had any impact on U.S. commerce.  *Lithuanian Commerce Corp. v. Sara Lee Hosiery*, 47 F. Supp. 2d 523, 536 (D.N.J. 1999), *aff'd in part, vacated in part on other grounds,* 248 F.3d 1130 (3d Cir. 2000) (plaintiff's failure to plead and prove that the

actions of defendant have had some adverse effect on United States commerce means that the court is deprived of subject matter jurisdiction.)

In addition, to the extent Albermarle has any applications or registrations for the Proposed Mark in foreign countries, any orders by a U.S. Court enjoining Albermarle's use of said marks would undoubtedly conflict with the trademark rights conferred by that foreign country.  Likewise, the Court should not exercise jurisdiction (or discretion) to force Albermarle to disclose its foreign trademark applications and registrations as a remedy for conduct solely outside the United States.  *See e.g., Zenger-Miller, Inc. v. Training Team, GmbH*, 757 F. Supp. 1062, 1071 (N.D. Cal. 1991) (suit against German company for its acts outside the U.S. was dismissed for lack of subject matter jurisdiction: "[E]ven though the Lanham Act can theoretically extend to a foreign defendant's activities outside the United States, it does not do so in this instance.").

**CONCLUSION**

For the reasons stated herein, Albermarle respectfully requests that the Court dismiss Counts I-VII of CPT's complaint for failure to state a claim on which relief can be granted. Albermarle further requests that the Court dismiss Count VIII as time barred and as unsustainable as a matter of law. Lastly, Albermarle requests that the Court find that it lacks subject matter jurisdiction to grant CPT's requested relief of an accounting of all Albermarle's foreign trademark applications and registrations for the Proposed Marks.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Thomas C. Grimm*
Thomas C. Grimm (#1098)
Jerry C. Harris, Jr. (#4262)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
tcgefiling@mnat.com
jharris@mnat.com
*Attorneys for Defendant Albermarle Corporation*

OF COUNSEL:

Judith A. Powell
KILPATRICK STOCKTON LLP
1100 Peachtree Street Suite 2800
Atlanta, GA  30309-4530
(404) 815-6500

February 21, 2006

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 21, 2006, I electronically filed the foregoing document with the Clerk of Court using CM/ECF, which will send notification of such filing to Peter C. Hughes.

I also certify that on February 21, 2006, I caused to be served true and correct copies of the foregoing document on the following in the manner indicated below:

<u>**BY HAND**</u>

Peter C. Hughes
Dilworth Paxson LLP
First Federal Plaza, Suite 500
Wilmington, DE  19801

<u>**BY FEDERAL EXPRESS**</u>

Thomas S. Biemer
Steve B. Goodman
Dilworth Paxson LLP
3200 Mellon Bank Center
1735 Market Street
Philadelphia, PA  19103

Michael Korniczky
One Crown Way
Philadelphia, PA  19154

*/s/ Thomas C. Grimm*
Thomas C. Grimm (#1098)
tcgefiling@mnat.com

507916