## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

CROWN PACKAGING
TECHNOLOGY, INC.,

                 **Plaintiff,**

    v.

ALBERMARLE CORP.,

                **Defendant.**

**C.A. No. 1:05-cv-892-JJF**

## PLAINTIFF'S BRIEF IN OPPOSITION TO
## DEFENDANT'S MOTION TO DISMISS

Peter C. Hughes, Esq.
Delaware ID. No. 4180
**DILWORTH PAXSON LLP**
First Federal Plaza
Suite 500
Wilmington, DE 19801
Tel: 302-571-9800
Fax: 302-571-8875

and

Thomas S. Biemer, Esq.
Steven B. Goodman, Esq.
**DILWORTH PAXSON LLP**
3200 Mellon Bank Center
1735 Market Street
Philadelphia, PA 19103
Tel: 215-575-7000

Attorneys for Plaintiff Crown Packaging
Technology, Inc.

**TABLE OF CONTENTS**

I.      Nature And Stage Of The Proceedings ............................................................. 1

II.     Introduction .................................................................................................... 1

III.    Counterstatement Of Facts .............................................................................. 2

IV.     Crown Seeks To Voluntarily Withdraw Its Federal Claims Based Upon The
        Representations Of Defendant's Declarant ...................................................... 5

V.      Summary Of Argument ................................................................................... 5

VI.     Argument ....................................................................................................... 6

    A.  In The Absence Of Any Remaining Federal Claims, The Court Should Remand
        The State Law Claims To The Delaware State Court ...................................... 6

    B.  Standard For Motion To Dismiss/Motion For Summary Judgment ................. 8

    C.  Crown's Delaware State Law Claims Should Not Be Dismissed ..................... 9

        1.  The Lanham Act Was Not Intended To Supplant State Law Causes Of Action For
            Trademark Infringement And Unfair Competition ................................... 9

        2.  Crown's Statutory State Law Claims Are Not Based On The Lanham Act And
            Do Not Contain The Lanham Act's Requirement Of "Use In Commerce" And
            Therefore Should Not Be Dismissed ..................................................... 10

        3.  Plaintiff Has Stated A Claim Under The Delaware Deceptive Trade Practices Act .... 11

        4.  Plaintiff Has Stated A Claim For Dilution Under The Delaware Trademark Act ........ 12

        5.  Plaintiff Has Stated A Claim Warranting Injunctive Relief Against Counterfeited
            Trademarks Under The Delaware Trademark Act .................................. 12

        6.  Defendant's Motion To Dismiss Plaintiff's Common Law Trademark Infringement
            Claim Should Be Denied. ..................................................................... 13

        7.  Defendant's Motion To Dismiss Plaintiff's Unfair Competition Claim Should
            Be Denied ........................................................................................... 14

        8.  Defendant's Motion To Dismiss Plaintiff's Slander Of Title Claim Should
            Be Denied Because The Claim Is Not Time Barred, Defendant's Statements Were
            Made Without Justification, And Plaintiff Has Adequately Pled Special Damages. ... 14

            (a)  The Slander Of Title Claim Is Not Time Barred ................................. 14

            (b)  Albermarle's Statements Were Made Without Justification ............... 15

            (c)  Crown Has Adequately Pled Special Damages ................................ 16

VII.    Conclusion ................................................................................................... 17

## <u>TABLE OF AUTHORITIES</u>

### Cases

20th Century Wear, Inc. v. Sanmark-Stardust Inc., 747 F.2d 81 (2d. Cir. 1984) ........................... 9

Borough of West Mifflin v. Lancaster, 45 F.3d 780 (3d Cir. 1995) ................................................ 7

Carino v. Stefan, 376 F.3d 156 (3d Cir. 2004) ............................................................................. 8

Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343 (1988) ................................................................ 7

Conley v. Gibson, 355 U.S. 41 (1957) .......................................................................................... 8

Delaware Solid Waste Authority v. Eastern Shore Environmental, Inc., 2002 WL 537691 (Del. Ch. March 28, 2002) ................................................................................................................ 10

Ditullio v. Universal Underwriters Ins. Co., 2003 U.S. Dist. LEXIS 12200 (E.D.Pa. June 6, 2003) ...................................................................................................................................... 6

Draper Communications, Inc. v. Delaware Valley Broadcasters Ltd. Partnership, 505 A.2d 1283 (Del. Ch. 1985) ................................................................................ 11, 12, 13

Fucci v. Graduate Hosp., 969 F. Supp. 310 (E.D.Pa. 1997) ......................................................... 8

In re Motivational Center, Inc., 1987 WL 14626 (Del Ch. Nov. 2, 1987) ................................... 15

In re Rockefeller Ctr. Props. Sec. Litig., 184 F.3d 280, 287-88 (3d Cir. 1999) ............................ 9

Int'l Bus. Machines. Corp., 1993 WL 259102 (Del. Super.) ....................................................... 14

Keebler Co. v. Rovira Biscuit Corp., 624 F.2d 366 (1st Cir. 1980) ............................................... 9

Lamie v. United States Trustee, 540 U.S. 526 (2004) ................................................................. 10

Lovell Mfg. v. Export-Import Bank of the United States, 843 F.2d 725 (3d Cir. 1988) ............... 7

Macia v. Microsoft Corp., 152 F.Supp.2d 535 (D. Vt. 2001) ................................. 9, 10, 15, 16, 17

Morse v. Lower Merion Sch. Dist., 132 F.3d 902 (3d Cir. 1997) .................................................. 8

Pa. Prot. & Advocacy, Inc. v. Pa. Dep't of Public Welfare, 402 F.3d 374 (3d Cir. 2005) ......... 8, 9

Read v. Baker, 430 F Supp. 472 (D.Del. 1977) .......................................................................... 15

Rocks v. City of Philadelphia, 868 F.2d 644 (3d Cir. 1989) ........................................................ 8

Rohn Industries, Inc. v. Platinum Equity LLC, 2005 Del. Super. LEXIS 413 (November 22, 2005) ................................................................................................................... 11

Rypac Packaging Mach. Inc. v. Coakley, 2000 WL 567895 (Del. Ch.) ...................................... 14

Schaffer v. Bd. of School Directors, 730 F.2d 910 (3d Cir. 1984) ................................................ 8

State of Delaware v. Wellington Homes, Inc., 2003 WL 22048231 (Del. Super.) ...................... 11

United Mine Workers v. Gibbs, 383 U.S. 715 (1966) ................................................................... 7

Young v. Joyce, 351 A.2d 857 (Del. 1975) ................................................................................. 11

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **CROWN PACKAGING TECHNOLOGY, INC.,** | | |
| | **Plaintiff,** | |
| v. | | |
| **ALBERMARLE CORP.,** | | **C.A. No. 1:05-cv-892-JJF** |
| | **Defendant.** | |

## PLAINTIFF'S BRIEF IN OPPOSITION TO
## DEFENDANT'S MOTION TO DISMISS

I.    **NATURE AND STAGE OF THE PROCEEDINGS**

On November 11, 2005, Plaintiff Crown Packaging Technology, Inc. ("Crown") brought this action in the Delaware Court of Chancery against Defendant Albermarle Corp. ("Albermarle") for trademark infringement, unfair competition and related claims under Delaware state law (six counts) and the federal Lanham Act (two counts). The gravamen of Crown's Complaint ("Complaint") is that Albermarle has engaged in efforts to register and use various word and design trademarks that are substantially similar to those belonging to Crown (the "Crown-related marks") in the United States and throughout the world. On the basis of the Lanham Act claims Defendant removed the action to this Court on December 28, 2005. Defendant filed an Answer on January 7, 2006 and now seeks dismissal of all counts of the Complaint.[1]

---

[1]    Defendant's Motion to Dismiss ("Defendant's Motion") appended a Declaration of Emily Kellum Breslin ("Breslin"), an attorney for Defendant's parent company, Georgia-Pacific Corporation, thereby effectively converting the Motion into one for summary judgment. F.R.C.P. 12(b)(6). Defendant subsequently permitted Plaintiff to conduct limited discovery, in the form of a deposition of Breslin, restricted to the content of her Declaration. Based upon the evidence offered by Defendant, Plaintiff now seeks to withdraw its federal claims and believes the Court should remand the remaining claims to state court. In the event that the Court considers addressing the state law claims, Plaintiff will respectfully seek an opportunity to conduct additional discovery pursuant to F.R.C.P. 56(f). *See* Statement Regarding Discovery Pursuant to F.R.C.P. 56(f) attached hereto as Exhibit "A".

## II.    INTRODUCTION

Defendant's Motion seeks dismissal of seven of the eight counts of the Complaint, consisting of both federal and state law claims, on the purported grounds that Albermarle has not "use[d] the allegedly offending marks in connection with the sale of products or services."[2] Brief in Support of Defendant's Motion ("Defendant's Brief") at 1.    Defendant bases its arguments on the Lanham Act's requirement that there must be "use in commerce" of a trademark *as defined in the Lanham Act*, a requirement which Defendant attempts to extend and impose upon Crown's statutory and common-law claims under Delaware state law.    However, Defendant misapprehends or misrepresents the law as it pertains to those state law claims.

With respect to the Lanham Act claims, however, Crown believes that Albermarle has now demonstrated, through the testimony of its Declarant, that Albermarle has not "used in commerce" the Crown-related marks as required under the Lanham Act, and therefore Crown seeks to voluntarily withdraw Counts IV and V of its Complaint or, alternatively, does not oppose dismissal of those claims.    With no remaining federal claims, Crown respectfully suggests that this Court should decline Defendant's request to exercise supplemental jurisdiction and remand the state claims.    However, in the event that the Court considers addressing the state law claims, dismissal of those claims is not warranted because neither the Lanham Act's requirement nor definition of "use in commerce" applies to Crown's state law claims, the elements of which are all adequately pled.

## III.    COUNTERSTATEMENT OF FACTS

Crown manufactures and sells products under several federally registered CROWN™ word and design trademarks throughout the United States and the world.    Complaint at ¶¶4, 6.

---

[2]  Count VIII of Crown's Complaint, alleging slander of title, is based upon statements made by Albermarle in its trademark applications to the United States Patent and Trademark Office ("PTO") and subsequent requests for extensions of those applications.  Defendant asserts separate defenses to this claim which are addressed below.

In June 2002, Albermarle filed 45 intent-to-use applications with the PTO to register Crown-related trademarks. While some applications were later abandoned and some were opposed by Crown,[3] at least three pending applications pertain to food packaging products such as containers, lids and closures, products similar to those to which Crown's distinctive CROWN™ trademarks apply. *Id.* at ¶¶14, 15, 16. Albermarle also filed applications to register Crown-related marks in a number of foreign countries identifying a variety of packaging products such as food containers, lids and closures, at least one of which was opposed by Crown. *Id.* at 19, 20.

Albermarle claims that Crown conducted "a two year investigation" without finding "one single instance of Albermarle's actually having affixed any of the Proposed Marks to a product and selling or even offering such a product for sale." Defendant's Brief at 4. This is highly misleading. In fact, as explained in Crown's Complaint, Crown's concerted efforts to investigate Albermarle's actions were stymied by Albermarle at every step. To begin with, Albermarle's true nature appeared to have been carefully concealed. The company was incorporated in Delaware by an attorney in the same month that Albermarle's attorneys filed its 45 intent-to-use applications for Crown-related marks, and the PTO database lists its attorneys' address as the corporation's correspondence address. Complaint at ¶¶12-14. From the time Crown first learned of Albermarle's applications in the United States and abroad in or about November 2003, Crown

---

[3]   Defendant suggests that because Crown filed notices of oppositions to only two of Albermarle's applications with the PTO, Crown "missed its opportunity to oppose registration" of the remaining three pending trademark applications identified in the Complaint. Defendant's Brief at 3. Any person may oppose registration by filing a notice of opposition with the Trademark Trial and Appeal Board within thirty (30) days after the mark is published, but the date when the mark is published varies depending upon the filing date of the application and the length of prosecution during which time the application is reviewed by an Examining Attorney. *See* 15 U.S.C. Section 1063 and 37 C.F.R. Sections 2.101 through 2.107. There is no duty on the part of a person who believes that he or she will be damaged by the registration of a mark to oppose an application within the thirty (30) day period, nor does the failure to file an opposition in any way act as a waiver of a person's rights in a mark. The opposition proceeding simply offers a first backstop after *ex parte* examination by the PTO. Moreover, any one who believes that he is or will be damaged by the registration may file a petition to cancel a registration during the first five years of registration of mark with the Trademark Trial and Appeal Board to initiate a cancellation proceeding. See 15 U.S.C. Section 1064.

repeatedly sought information through Albermarle's attorneys of record regarding Albermarle's use of Crown-related marks. Albermarle, through its attorneys, even agreed to delete certain product category references in its U.S. applications but then never did so and, in fact, persisted in attempting to register Crown-related marks in those categories. Albermarle also refused to provide any information whatsoever about its foreign applications. *Id.* at ¶¶ 23-26.

All of this was considered in conjunction with Albermarle's continued filing of requests for extensions of time with the PTO with regard to Albermarle's applications to use CROWN-related marks, as recently as August 2005. In those statements Albermarle asserted rights to use Crown-related marks and asserted that it was engaged in activities in preparation for using those marks in connection with the various products described in its applications. *Id.* at ¶¶16-17, 66.

Thus, based upon Albermarle's resistance to providing information about its actions and intentions and the statements it submitted to the PTO, Crown appropriately pled upon information and belief that Albermarle was preparing or threatening to use its Crown-related marks, but also that Crown would be able to demonstrate, if given a reasonable opportunity for further discovery, that Albermarle was using its CROWN-related marks in connection with United States commerce. *See* Complaint ¶¶ 42, 45-47, 50-51.

Appended to Defendant's Motion, however, was the Breslin Declaration containing a statement that Albermarle is not now using and has never used the Crown-related marks on or in connection with goods or services in United States commerce. Defendant subsequently permitted Plaintiff to conduct limited discovery, in the form of a deposition of Breslin, restricted to the content of her Declaration. However, when Crown sought to discover (a) what activities Albermarle had engaged in which might demonstrate its alleged *bona fide* intent to use the Crown-related marks in commerce, as reflected by its statements to the PTO, and (b) what use

Albermarle has made of its Crown-related marks in connection with goods or services in foreign countries, Defendant's counsel refused to permit Breslin to answer any questions on these issues. *See* excerpts of transcript of deposition testimony of Emily Kellum Breslin attached hereto as Exhibit "B".

## IV.    CROWN SEEKS TO VOLUNTARILY WITHDRAW ITS FEDERAL CLAIMS BASED UPON THE REPRESENTATIONS OF DEFENDANT'S DECLARANT

Based upon the representations of Breslin in her Declaration attached to Defendant's Motion and her deposition testimony, Plaintiff believes that Defendant has now established, as a threshold issue, that Defendants did not "use" the Crown-related marks in U.S. commerce as required under and defined in the Lanham Act.   Therefore, Crown seeks to withdraw those claims based upon the Lanham Act which are set forth in Counts IV and V of its Complaint or, alternatively, does not oppose dismissal of those counts.

As explained below, if those claims are withdrawn or dismissed, the clear weight of authority in this Circuit suggests that the Court should decline jurisdiction over the remaining state claims which should be remanded back to the state court from which this action was removed.   However, in the event that the Court might not remand the action and instead decides to address the state law claims, Crown respectfully would seek leave to amend its complaint to remove the federal law counts.

## V.    SUMMARY OF ARGUMENT

If the Lanham Act claims in Crown's Complaint are withdrawn or dismissed, the Court should decline to exercise supplemental jurisdiction and should remand the remaining state law claims to the state court from which the action was removed.   However, even if the Court were to consider the state claims, dismissal would not be warranted.

First, the Lanham Act does not supplant state law causes of action for trademark infringement and unfair competition and, contrary to Defendant's contention, the Lanham Act's "use in commerce" language and requirement do not apply to either the statutory or common law state claims.  Second, each of the state law causes of action is well pled and states a legally sufficient claim upon which relief may be granted.  This includes Crown's slander of title claim, which also is not barred with respect to false statements made to the PTO after November 2002, which were not justified as a matter of law.  Finally, if the state claims are considered under a summary judgment standard, Crown must be given an adequate opportunity to conduct appropriate discovery pursuant to F.R.C.P. 56(f).

## VI.  ARGUMENT

### A.    IN THE ABSENCE OF ANY REMAINING FEDERAL CLAIMS, THE COURT SHOULD REMAND THE STATE LAW CLAIMS TO THE DELAWARE STATE COURT

It is well-settled that supplemental jurisdiction is not an independent source of federal jurisdiction. *See e.g., Ditullio v. Universal Underwriters Ins. Co.*, 2003 U.S. Dist. LEXIS 12200, at *13 (E.D.Pa. June 6, 2003).[4]  This Court properly accepted supplemental jurisdiction over Crown's state law claims when Albermarle removed this case on the basis of the federal claims raised in the Complaint.  However, if the federal claims are withdrawn or dismissed, the Court should conclude that the exercise of supplemental jurisdiction over the state law claims is no longer proper.  As the United States Supreme Court has stated, the justification for supplemental jurisdiction

> lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them. Needless decisions of state law

---

[4]  Copies of unreported cases referenced herein which cite to the Westlaw service are collected and attached hereto as Exhibit "C", for the Court's convenience.

> should be avoided both as a matter of comity and to promote
> justice between the parties, by procuring for them a surer-footed
> reading of applicable law.

*United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) (internal citations omitted).  Although

*Gibbs* was decided prior to the enactment of the federal supplemental jurisdiction statute,

codified at 28 U.S.C. § 1367(c), the Third Circuit has stated that the federal statute was intended

only to codify the law as set forth in *Gibbs* and its progeny and not to supplant it.  *See Borough*

*of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995).  A *Gibbs* analysis indicates that

maintaining jurisdiction over Crown's state law matters would be improper.  As the Supreme

Court has observed,

> a remand may best promote the values of economy, convenience,
> fairness, and comity. Both litigants and States have an interest in
> the prompt and efficient resolution of controversies based on state
> law. Any time a district court dismisses, rather than remands, a
> removed case involving [supplemental] claims, the parties will
> have to refile their papers in state court, at some expense of time
> and money. Moreover, the state court will have to reprocess the
> case, and this procedure will involve additional costs. Dismissal of
> the claim therefore will increase both the expense and the time
> involved in enforcing state law.

*Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 353 (1988).  Crown respectfully requests that in

order to prevent further and unnecessary expenditure of time, money and resources, that the

Court decline to address the remaining state law claims and remand them to the state court.

　　　The law of the Third Circuit clearly favors declining the exercise of jurisdiction of state

law claims once claims under federal law have been eliminated. *See, e.g., Borough of West*

*Mifflin*, 45 F.3d at 788 (stating that, where claims over which the district court has jurisdiction

are dismissed before trial, the district court "must" decline to decide state law claims unless the

considerations of judicial economy, convenience, and fairness provide affirmative justification

for doing so); *Lovell Mfg. v. Export-Import Bank of the United States*, 843 F.2d 725, 734 (3d

Cir. 1988) (stating that "once all federal claims have been dropped from a case, the case simply does not belong in federal court"); *Schaffer v. Bd. of School Directors*, 730 F.2d 910, 913 (3d Cir. 1984) (finding that the district court abused its discretion in retaining jurisdiction over the state claims when the federal claim was dismissed prior to trial); *Fucci v. Graduate Hosp.*, 969 F. Supp. 310, 320-21 (E.D.Pa. 1997) (stating that, when all federal claims are dismissed prior to trial, the district court should ordinarily decline jurisdiction of any supplemental state law claims as well). Given that the federal claims will be voluntarily withdrawn or dismissed and a *Gibbs* analysis reveals no "affirmative" reason for maintaining jurisdiction, Crown respectfully asks this Court to follow the precedent of the Third Circuit and remand the state law claims.

**B.    STANDARD FOR MOTION TO DISMISS/MOTION FOR SUMMARY JUDGMENT**

The Court should only grant a motion to dismiss if it "appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *See Carino v. Stefan*, 376 F.3d 156, 159 (3d Cir. 2004) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). In considering the motion, the Court is required to accept as true all of the allegations in the Complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the plaintiff. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (citing *Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir. 1989)).

In reviewing a motion for summary judgment, the Court must determine whether there are any genuine issues of material fact such that a reasonable jury could return a verdict for the plaintiff. *See Pa. Prot. & Advocacy, Inc. v. Pa. Dep't of Public Welfare*, 402 F.3d 374, 379 (3d Cir. 2005). In making that determination, the Court is required to review the record and draw all inferences in the light most favorable to the non-moving party. *Id.* When a Court decides to

convert a motion to dismiss into a motion for summary judgment, it must provide the parties with a "reasonable opportunity" to present all material relevant to a summary judgment motion. *See In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287-88 (3d Cir. 1999). Therefore, the plaintiff must be given a reasonable opportunity to provide "admissible evidence containing specific facts showing that there is a genuine issue for trial." *See Pa. Prot. & Advocacy, Inc.*, 402 F.3d at 379.

### C.     CROWN'S DELAWARE STATE LAW CLAIMS SHOULD NOT BE DISMISSED

In the event that the Court considers addressing Defendant's Motion with respect to Crown's state law claims, dismissal of those claims would be inappropriate for the following reasons:

### 1.     The Lanham Act Was Not Intended To Supplant State Law Causes Of Action For Trademark Infringement And Unfair Competition

The Lanham Act was not intended to preempt the states' ability to recognize and protect trademark rights. *Keebler Co. v. Rovira Biscuit Corp.*, 624 F.2d 366, 372 n. 3 (1st Cir. 1980). Nor does it "preempt the broader consumer-oriented remedies provided by the common law of unfair competition." *20th Century Wear, Inc. v. Sanmark-Stardust Inc.*, 747 F.2d 81, 93 (2d. Cir. 1984) citing *Keebler Co.*, 624 F.2d 366, 373. Moreover, "because the purpose of the Lanham Act is to protect trademark holders and the public, state law which arguably provides greater protection [as in this case] does not conflict with the Act, but complements it." *Macia v. Microsoft Corp.*, 152 F.Supp.2d 535, 540-41 (D. Vt. 2001) (citation omitted).

The state law trademark and unfair competition claims set forth in Plaintiff's Complaint do indeed implicate greater protections to trademark holders and consumers and are not preempted by the Lanham Act claims. Therefore, even if the latter claims are withdrawn or dismissed, Crown's state law claims, all of which are adequately pled, should not be dismissed

but should be remanded back to state court. *See, e.g., Macia*, 152 F. Supp. at 540-41, 542 (denying motion to dismiss slander of title claim which was adequately pled, despite having granted the motion to dismiss plaintiff's Lanham Act claim).

**2.**    **Crown's Statutory State Law Claims Are Not Based On The Lanham Act And Do Not Contain The Lanham Act's Requirement Of "Use In Commerce" And Therefore Should Not Be Dismissed**

Crown's Complaint sets forth three claims under two Delaware State statutes, the Delaware Deceptive Trade Practices Act (the "DTPA"), 6 Del. Code §2531, et. seq. (Count I of the Complaint) and the Delaware Trademark Act, 6 Del. Code § 3313 (Counts II and III of the Complaint). There is no evidence that either of these statutes is based on the Lanham Act. *See, e.g., Delaware Solid Waste Authority v. Eastern Shore Environmental, Inc.*, 2002 WL 537691 at *5, n. 22 (Del. Ch. March 28, 2002) (noting that "the Lanham Act is not the [DTPA, nor is there anything to support the] proposition that the [DTPA] is based on the Lanham Act, or that a possible violation of the Lanham Act would also be a violation of the [DTPA]").

Significantly, neither the DTPA nor the Delaware Trademark Act contain the Lanham Act's "use in commerce" language. *See* 6 Del. Code § 2531, *et seq.*; 6 Del. Code § 3313. Where the language of a statute is clear, it should not be given a different interpretation by the courts. *See Lamie v. United States Trustee*, 540 U.S. 526, 534 (2004); *see also Rohn Industries, Inc. v. Platinum Equity LLC*, 2005 Del. Super. LEXIS 413, at *29-30 (November 22, 2005) (courts should look beyond the statutory text only if the statute is ambiguous). Thus, a "use in commerce" requirement should not be read into the text of either the DTPA or the Delaware Trademark Act, and this Court should deny Defendant's Motion with respect to the Delaware statutory claims.

3.    **Plaintiff Has Stated A Claim Under The Delaware Deceptive Trade Practices Act**

Delaware's DTPA codifies the Uniform Deceptive Trade Practices Act which, in turn, codifies the common law of unfair competition. *Young v. Joyce*, 351 A.2d 857, 859 (Del. 1975). Unfair competition at common law referred to "[d]eceptive conduct constituting unreasonable interference with another's promotion and conduct of business [as] part of a heterogeneous collection of legal wrongs known as 'unfair trade practices.'" *State of Delaware v. Wellington Homes, Inc.*, 2003 WL 22048231 (Del. Super.).

With regard to cases involving trademarks or tradenames, the critical inquiry under the DTPA is whether the defendant's use of a tradename or trademark creates a "likelihood of confusion." *Draper Communications, Inc. v. Delaware Valley Broadcasters Ltd. Partnership*, 505 A.2d 1283, 1290 (Del. Ch. 1985). To prevail under the DTPA, a complainant need not prove competition between the parties, actual confusion or misunderstanding, monetary damages or an intent to deceive. *Id.* The DTPA also codifies the common law under which "the later use by another of a trademark or tradename will be restrained if the later-used trademark or tradename is so similar to the prior-used trademark or tradename as to create a likelihood that the marks or names will be confused. . . . If likelihood of confusion is shown, an injunction will issue without any need to show actual loss, or diversion of the plaintiff's business, or intent on the part of the defendant to inflict injury or damage." *Id.* at 1289-90.

There is no requirement under the DTPA that a mark must currently be in use in commerce. Rather, anticipated use of trademarks or tradenames likely to cause confusion is sufficient for an injunction under the DTPA. So, for example, in *Draper Communications*, the Delaware Chancery Court enjoined the future use by a broadcaster of the call letters "WBOT-

TV" because of the likelihood of confusion with the television station broadcasting under the call letters "WBOC-TV". 505 A.2d 1283.

Crown has adequately pled in Count I of its Complaint that Albermarle's planned and prospective use of its Crown-related marks is likely to cause confusion with Crown's distinctive CROWN™ trademarks under the meaning of the DTPA and, therefore, has stated a legally sufficient claim under that Act.

### 4.    Plaintiff Has Stated A Claim For Dilution Under The Delaware Trademark Act.

Under the Delaware Trademark Act, "[l]ikelihood of injury to business reputation or of dilution of the distinctive quality of a mark registered under this chapter, or a mark valid at common law or a trade name valid at common law, shall be a ground for injunctive relief notwithstanding the absence of competition between the parties, or the absence of confusion as to the source of goods or services." 6 Del. Code § 3313. Use of the registered mark in commerce is not required under the statute. *See id.*

Crown has adequately pled the necessary elements for a claim for dilution under the Delaware Trademark Act in Count II of its Complaint, alleging that Crown's registered marks are famous within the United States and worldwide and that Albermarle's use or threatened use of its Crown-related marks is likely to dilute the distinctive quality of the Crown marks. *See* Complaint at ¶¶ 38-39.

### 5.    Plaintiff Has Stated A Claim Warranting Injunctive Relief Against Counterfeited Trademarks Under The Delaware Trademark Act

The Delaware Trademark Act defines a "forged or counterfeited" trademark as:

> (1) any mark or design which is identical to, substantially indistinguishable from, or an imitation of a trademark, service mark, or copyrighted or registered design which is registered for those types of goods or services ... and (2) any mark or design which is designed to, is reasonably likely to, or does give the

> impression that the mark or design, or the good or product to
> which the mark or design is affixed, is authorized by or produced
> by an owner of a trademark or service mark or copyrighted or
> registered design. . . .

6 Del. Code § 3314(b). The Act authorizes injunctive relief against persons known or unknown

to enjoin them from the manufacture, use, display or sale of counterfeits. 6 Del. Code §

3314(g)(1). The Act does not require use in commerce for injunctive relief to be granted. *See id.*

Because Crown has adequately pled each of the elements necessary for injunctive relief against

counterfeited trademarks in Count III of the Complaint, Crown has stated a legally sufficient

claim for relief under the Delaware Trademark Act.

      **6.**     **<u>Defendant's Motion To Dismiss Plaintiff's Common Law Trademark
Infringement Claim Should Be Denied.</u>**

Under the common law of trademark infringement, a trademark or tradename that (1)

acquires special significance (2) either through prior exclusive use in the same market, or

through having acquired a secondary meaning, (3) is entitled to protection from use by others.

*See Draper Communications, Inc.*, 505 A.2d at 1289. Specifically, the later use by another of a

trademark or tradename will be restrained if the later-used trademark or tradename is so similar

to the prior-used trademark or tradename as to create a likelihood that the marks or names will be

confused. *See id.* at 1289-90. "Use in commerce," as that phrase is defined under the Lanham

Act, is not required. To state a claim for common law trademark infringement, anticipated use is

sufficient. *See id.* (granting an injunction against anticipated future use of station call letters

which was likely to cause confusion).

Crown has pled each of the required elements of common law trademark infringement in

Count VI of its Complaint and, therefore, has stated a legally sufficient claim.

7.    **Defendant's Motion To Dismiss Plaintiff's Unfair Competition Claim Should Be Denied.**

To state a claim for unfair competition under Delaware law, the plaintiff must allege that it (1) has a reasonable expectancy of entering a valid business relationship with which the defendant (2) wrongfully (3) interferes, (4) thereby defeating the plaintiff's legitimate expectancy and causing the plaintiff harm. *See Rypac Packaging Mach. Inc. v. Coakley*, 2000 WL 567895, at *8 (Del. Ch.), citing, *Int'l Bus. Machines. Corp.*, 1993 WL 259102, at *22 (Del. Super). Crown has pled each of these elements in its Complaint. *See* Complaint ¶¶ 59-63. In addition, the common law tort of unfair competition has been codified in the Delaware DTPA, as discussed *supra*, and Crown has adequately pled under that Act. Thus, the Complaint states a legally sufficient claim for unfair competition.

8.    **Defendant's Motion To Dismiss Plaintiff's Slander Of Title Claim Should Be Denied Because The Claim Is Not Time Barred, Defendant's Statements Were Made Without Justification, And Plaintiff Has Adequately Pled Special Damages.**

(a)    **The Slander Of Title Claim Is Not Time Barred**

The parties agree that under Delaware law, slander of title claims are subject to a three-year statute of limitations. *See* Del. Code Ann. tit. 10, § 8106. Defendant's Brief at 11. Arguably, claims based upon statements made in Albermarle's original intent-to-use applications in June 2002 would thus be time barred.[5] However, Albermarle filed a series of requests for extensions of time between February 2004 and August 2005 related to its initial applications, and it is alleged that Albermarle published false and misleading statements therein concerning its title to the Crown name and design and its *bona fide* intent to use the Crown-related marks. *See* Complaint at ¶ 66. A slander of title claim may proceed based on statements made in extension

---

[5]    Defendant appears to suggest in some places that Crown's slander of title claim is barred in its entirety though, upon closer reading, Defendants implicitly acknowledge that these claims are not barred as to statements made in Albermarle's requests for extensions after November 2002. *See* Defendant's Brief at 11.

requests even if claims based on statements in the original intent-to-use applications would be time barred. *See Macia v. Microsoft Corp.*, 152 F.Supp.2d at 541. (allowing slander of title claim to proceed based on extension requests despite the fact that statements made in the original applications were time barred).

Claims based on statements made by Albermarle in its extension requests filed after November 11, 2002 are not time barred and Crown must therefore be permitted to proceed with the adjudication of these claims. *See generally Read v. Baker*, 430 F Supp. 472, 477 (D.Del. 1977) (allowing slander of title claim for statements published within the statutory time period).

**(b)**    **Albermarle's Statements Were Made Without Justification**

Crown alleges that Albermarle published false and misleading statements concerning Albermarle's title to Crown-related name and design marks which were neither privileged nor justified.[6] *See* Count VIII of Complaint. Albermarle argues that its initial statements concerning title to the Crown-related marks were "justified" because the PTO approved its intent-to-use applications and no oppositions to those applications were filed. Defendant's Brief at 12. Albermarle then claims that "any statements it made thereafter in its requests for extension of time were based on that belief," *i.e.*, concerning its rights to title to the Crown-related marks, and were therefore "justified." That is patently absurd.

First, Albermarle (and Georgia-Pacific) certainly were aware of Crown and its famous CROWN™ trademarks when the initial applications were filed. Second, and most importantly, beginning in November 2003, Crown contacted Albermarle's attorneys and repeatedly expressed concern and opposition to Albermale's Crown-related filings, including filing notices of opposition to Albermarle's PTO and foreign applications. Indeed, Albermarle even agreed to

---

[6]    Under Delaware law, the elements of a slander of title action include (1) malicious (2) publication of (3) false matter concerning the state of title of property which (4) causes special damages. *See In re Motivational Center, Inc.*, 1987 WL 14626 (Del Ch. Nov. 2, 1987).

delete the phrase, "food containers, lids and closures" from its trademark applications in the United States, although it never did so. Instead, Albermarle continued to issue statements to the PTO, as recently as August 2005, concerning its putative title and intentions. Third, a failure to file a notice of opposition to each and every intent-to-use application within the 30-day window for each approved application does not signal a trademark holder's waiver of rights or relieve a filing party of its obligation to make truthful statements to the PTO.[7] Finally, summary judgment on this issue would not be appropriate where there are issues of fact regarding the bases of Albermarle's statements to the PTO (about which Defendants have refused to provide any discovery), for which Crown would seek leave of Court to take discovery pursuant to Rule 56(f).

Defendant cites to two disparate cases from Utah (1975) and Texas (1982), apparently for the proposition that the parties in those cases had sufficient bases for believing they had title to the properties at issue. Defendant's Brief at 12. That simply is not the case here where Albermarle was clearly on notice of Crown's rights to its CROWN™ trademarks, even to the extent that Albermarle agreed to amend its applications, though it never did. Defendant's claims of "justification" for making false statements are simply unavailing.

### (c)    Crown Has Adequately Pled Special Damages

Albermarle finally argues that Crown's slander of title claim should be dismissed because Crown has not adequately pled special damages. As the district court observed in *Macia v. Microsoft*, special damages may include "expenses incurred in removing the effects of the slander." 152 F. Supp. 2d at 54. As the result of Albermarle's false statements to the PTO, Crown incurred expenses *inter alia*, in communicating with Albermarle's lawyers about Crown's

---

[7]  *See* footnote 3, *supra*.

opposition to Albermarle's filings and responding to those filings.  Crown has adequately pled special damages as an element of its slander of title claim.  *See id.* at 542.

Because Crown has adequately pled each of the elements of its slander of title claim and also that Albermarle acted without justification in making false statements, the Court should deny Albermarle's Motion with regard to Count VIII of the Complaint.

## VII.    <u>CONCLUSION</u>

As stated herein, Plaintiff voluntarily withdraws its federal claims under the Lanham Act (Counts IV and V of its Complaint) or otherwise consents to dismissal of these claims, and respectfully requests that the Court remand the remaining state law claims back to Delaware state

court. However, in the event that the Court might retain jurisdiction over the latter claims, Plaintiff has set forth the reasons why Defendant's Motion to Dismiss fails on each and every state law claim.

Respectfully submitted,


Peter C. Hughes, Esq.
Delaware ID. No. 4180
**DILWORTH PAXSON LLP**
First Federal Plaza
Suite 500
Wilmington, DE 19801
Tel: 302-571-9800
Fax: 302-571-8875

and


Thomas S. Biemer, Esq.
Steven B. Goodman, Esq.
**DILWORTH PAXSON LLP**
3200 Mellon Bank Center
1735 Market Street
Philadelphia, PA 19103
Tel: 215-575-7000

Attorneys for Plaintiff Crown Packaging
Technology, Inc.



Dated: 3/23/06