EXHIBIT B

```
 1              IN THE UNITED STATES DISTRICT COURT

 2                  FOR THE DISTRICT OF DELAWARE

 3                                          ORIGINAL

 4   CROWN PACKAGING TECHNOLOGY,
     INC.,
 5                                    Civil Action No. 05-892
              Plaintiff,
 6                                    Memorandum in Support of
          vs.                         Defendant's Motion to
 7                                    Dismiss for Failure to
     ALBERMARLE CORPORATION,          State a Claim for Which
 8                                    Relief Can be Granted
              Defendant.
 9   _____

10

11              TELEPHONIC DEPOSITION OF

12                  E. KELLY BRESLIN

13         133 PEACHTREE STREET / 42ND FLOOR

14             MARCH 1, 2006 / 2:08 p.m.

15

16

17

18   REPORTED BY:
     ANNA-MARIE CHEAK, RPR/CSR
19   ESQUIRE DEPOSITION SERVICES
     ATLANTA OFFICE - 404-872-7890
20   FILE NO: 420650

21

22

23

24

25
```

1   and to the best of your recollection, these were all
2   filed in June of 2002?
3       A   As I mentioned, we -- yes. We filed a
4   batch of applications in June of 2002 that I will,
5   upon your representation, those numbers are included
6   in that batch.
7       Q   And as I asked you earlier, I want to
8   confirm, you are aware that a series of requests for
9   extensions have been filed for each of these three
10  applications; is that correct?
11      A   Yes.
12      Q   And you are familiar, or would have been
13  familiar at the time with each of these requests,
14  correct?
15      A   Yes.
16      Q   And each of these requests, would they
17  have reflected a bonafide intent to use the marks in
18  commerce?
19      A   After we did an appropriate investigation,
20  we would have instructed Troutman to file extensions
21  of time, if appropriate.
22      Q   So before you file a request for
23  extension, you have to do an appropriate
24  investigation?
25      A   Yes.

```
 1        Q    What would that consist of?
 2        A    I can't relate --
 3             MS. POWELL:  I think you're invading
 4        the Attorney/Client Privilege, so I'm
 5        going to instruct her not to -- not to
 6        respond with respect to anything that
 7        would invade the Attorney/Client
 8        Privilege.
 9   BY MR. GOODMAN:
10        Q    Can you tell me what your investigation
11   would consist of to the extent it would not involve
12   the Attorney/Client Privilege issue?
13        A    Everything would.
14        Q    Okay.  Now, is it correct that the first
15   request for extensions of these three trademark
16   applications were filed in February of 2004?
17        A    I will have no knowledge of those exact
18   dates at all.
19        Q    Are there certain periods of time at which
20   you must file an extension?
21        A    I mean, as a general rule, you have six
22   months to file your next extension.
23        Q    If -- does it sound correct that no reason
24   have reason was given for the first request for
25   extension?
```

```
 1      A    Yes.  That's a possibility.
 2      Q    Is that because it is not necessary to
 3 provide a reason for a first request?
 4      A    Yes, that's my understanding.
 5      Q    Okay.  The second request might that have
 6 been filed in -- well, you're not sure of the dates
 7 when they were filed, right?
 8      A    Not at all; not at all.
 9      Q    But they would be approximately six months
10 apart?
11      A    That would be correct.
12      Q    The second request for extension of all
13 three of these applications, I would represent
14 stated, quote, the applicant is conducting research,
15 unquote.  Does that sound correct?
16      A    Again, I'd have to let those documents
17 speak for themselves.  As I sit here today, I don't
18 recall what was put in each and every extension of
19 time.
20      Q    Okay.  Assume that this second extension
21 stated that this applicant is conducting research,
22 you would have approved that statement, correct?
23      A    Myself, or somebody on my staff, or the
24 outside Counsel, yes.
25      Q    Can you tell me what research was being
```

```
 1    conducted that would have --
 2           MS. POWELL:  I'm going to object
 3    again.  I believe that's going to invade
 4    the Attorney/Client Privilege.
 5           MR. GOODMAN:  At this point, I don't
 6    know if that's true, because I -- let me
 7    just make a point here and tell me what
 8    you think.
 9           When you file that statement or any
10    of these statements with the PTO, you're
11    representing to them that this reflects a
12    bonafide intent, these are actions that
13    are being taken reflecting a bonafide
14    intent to use the marks, and you're
15    stating to them that you are, you know,
16    engaging in certain activities.
17           And I'm just asking what activities
18    are you representing to the PTO that
19    you're taking.
20           MS. POWELL:  No.  That does invade
21    the Attorney/Client Privilege, and so I
22    therefore object to your inquiring along
23    those lines.  Steve, let me point out to
24    you that what we -- what I said in my
25    letter was that if you really needed to
```

```
 1    take Discovery with respect to use of the
 2    marks, then I would allow you to take that
 3    Discovery of Ms. Breslin, but this does
 4    not have to do with use of the marks.
 5         This has to do with the filings that
 6    you're asking about, and so I would like
 7    to ask you politely to restrict your line
 8    of questioning to the subject matter that
 9    we agreed she could be deposed about.
10         MR. GOODMAN:  Okay, well then, let
11    me -- let me explain my understanding.
12    There was a series of statements made that
13    refer to research, research and
14    development, or product or research --
15    service research and development, and I
16    guess what I'm trying to inquire was
17    whether the activities related to any of
18    these statements might constitute use, and
19    that's why I'm trying to inquire along
20    those lines.
21         MS. POWELL:  You know, what use of
22    the marks has to do with is use that
23    involves sale of product, which is not
24    research, which has to do with shipping
25    the product, which is not research, with
```

```
 1    respect to -- this is with respect to
 2    goods, and so I'm having a hard time
 3    understanding why you're asking questions
 4    about research when what we're talking
 5    about are commercial activities.
 6         You know, the PTO intentionally has
 7    it set up so that parties don't have to
 8    disclose what they're doing, because if
 9    you put in the public records what you're
10    doing, it tips off your competitors about
11    your potential activities.
12         MR. GOODMAN:  Right, and --
13         MS. POWELL:  So that's why -- that's
14    why these general terms are put in there.
15         MR. GOODMAN:  Okay, but here's what
16    I'm trying to get at is, it appears to me
17    that the determination of what is use,
18    although I understand that you're giving
19    me a formula which is, you know, typically
20    recounted in certain places, but perhaps
21    the determination of what is use may be a
22    legal determination and it may vary in
23    some context.
24         MS. POWELL:  Well, you know, this is
25    not a formula that I made up.  This is --
```

```
 1      this is what the law says is use, and so
 2      if you want to ask her have you sold any
 3      goods of the goods that are described in
 4      the categories of these three applications
 5      that you're asking about, or any of the
 6      other applications, you can ask them, has
 7      Albermarle sold any such goods, has
 8      Albermarle shipped in U. S. commerce any
 9      goods of the various descriptions under
10      the various trademark applications.
11           But I don't -- I don't think that
12      asking her what research was done gets to
13      the question of whether the goods have
14      been sold or shipped in commerce,
15      interconnection with these marks, because
16      general research may or may not have to do
17      with the marks themselves.
18           MR. GOODMAN:  Right, and if she told
19      me that, then I would know that, but I
20      guess that's what I was asking, is
21      whether -- and first of all, as far as
22      tipping off competitors, you know, if you
23      want to -- if you want to answer something
24      and provide for the protection of
25      confidential and proprietary information--
```

```
 1          MS. POWELL:  No, I'm -- I'm
 2     protecting Attorney/Client Privileged
 3     information today.  I am explaining to you
 4     why this deposition is of a very limited
 5     scope.
 6          MR. GOODMAN:  Right, I understand,
 7     and I guess what I'm trying to do is just
 8     try to determine whether, for example, the
 9     research or the quote, "development,"
10     might have involved activities that could
11     be construed as use, taking that broadly.
12          I understand if I ask you, were any
13     of the goods sold or distributed in U. S.
14     commerce, I'm pretty sure you're going to
15     say no, but I guess I was trying to -- you
16     know, I am trying to find out what other
17     actives might have been undertaken, which
18     in some context might be construed as use.
19          I'm not as up on the law, I admit, as
20     you are, but you know, it is -- in my mind
21     it is possible that that could happen.
22          MS. POWELL:  I suggest you ask her
23     about specific activities that would have
24     taken place in the public arena that would
25     therefore not constitute privileged
```

```
 1        purely for the purpose of your responding
 2        to the Motion.
 3             MR. GOODMAN:  Well, could I put some
 4        questions on the record, and you know, you
 5        can instruct the Witness any way you want?
 6   BY MR. GOODMAN:
 7        Q    Is Albermarle using, or has it ever used
 8   any of the CROWNMARK or CROWNSOURCE marks in
 9   connection with goods or services in foreign
10   countries?
11             MS. POWELL:  Well, you know, if you
12        want to ask for the record two or three
13        questions, whatever it is, that's fine.
14        I'm going to object, because the Judge
15        ordered that there should be no Discovery.
16             I permitted you to take Discovery
17        with respect to the subject matter of the
18        Motion insofar as Ms. Breslin gave a
19        Declaration.  The subject matter of the
20        Motion goes to use of the marks in U. S.
21        commerce, and so your question is beyond
22        the scope of the deposition.
23             It's beyond the scope of anything
24        that the Judge was allowing.
25             MR. GOODMAN:  I'm not really sure if
```

```
 1      that's true.  I know that your Motion
 2      states that there's no jurisdiction, that
 3      the Court does not have jurisdiction over
 4      the filing of applications in foreign
 5      countries.  I believe that was the
 6      terminology, something like that, but I'm
 7      asking about the use of marks in foreign
 8      countries.
 9              MS. POWELL:  Well, Steve, if you -- I
10      know you've been busy, but when you have a
11      chance to read the Brief, you'll see that
12      it explains that the Lanham Act does not
13      extend to activities in foreign countries
14      unless it impacts U. S. commerce, and
15      so -- and so general activities in foreign
16      countries don't have anything to do with
17      the Motion.
18              MR. GOODMAN:  Okay, but there would
19      be two pieces to that.  There might be use
20      of the marks in connection with activities
21      in foreign counties, and the second part
22      of it would be, would those activities
23      impact on U. S. commerce.
24              But if I can't get to the first part,
25      how can I --
```