EXHIBIT C

LEXSEE

**ANGELO DITULLIO, et al. v. UNIVERSAL UNDERWRITERS INSURANCE COMPANY, et al.**

**CIVIL ACTION NO. 03-0239**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

*2003 U.S. Dist. LEXIS 12200*

**June 6, 2003, Decided**
**June 9, 2003, Filed; June 10, 2003, Entered**

**DISPOSITION:** [*1] Plaintiffs' Motion to Remand GRANTED; Defendant Universal Underwriters Insurance Company's Petition to Consolidate DENIED AS MOOT; Case REMANDED to the Court of Common pleas for Philadelphia County.

**COUNSEL:** For ANGELO DITULLIO, DONNA DITULLIO, Plaintiffs: PAUL N. SANDLER, SANDLER & MARCHESINI PC, PHILADELPHIA, PA.

For UNIVERSAL UNDERWRITERS INSURANCE COMPANY, LOEW'S COMPANIES, INC., Defendants: JEFFREY C. SOTLAND, MINTZER SAROWITZ ZERIS LEDVA & MEYERS, DANIEL D. KREBBS, MARSHALL DENNEHEY WARNER COLEMAN & GOGGIN, PHILADELPHIA, PA.

**JUDGES:** HERBERT J. HUTTON, J.

**OPINIONBY:** HERBERT J. HUTTON

**OPINION:**

**MEMORANDUM AND ORDER**

HUTTON, J.

In this case, Plaintiffs Angelo and Donna DiTullio are suing Defendants Universal Underwriters Insurance Company ("Universal Underwriters") and Lowe's Companies, Inc., alleging negligence and breach of contract claims resulting from a forklift accident. The instant case was removed from the Court of Common Pleas for Philadelphia County to this Court on January 10, 2003. Presently before the Court are Plaintiffs' Motion to Remand (Docket No. 2) and Defendant Universal Underwriters' Petition to Consolidate (Docket No. 12). n1 For [*2] the reasons discussed below, Plaintiffs' Motion is granted and Defendant's Petition is denied as moot. The case is remanded to the Court of Common Pleas for Philadelphia County.

n1 As discussed below, the instant case is related to Universal Underwriters Ins. Co. v. E.R. Collision Company, docketed at Civil Action Number 02-08875. Universal Underwriters' Petition to Consolidate is cross-filed as Docket Number 20 in that action.

**I. BACKGROUND**

This case arises out of forklift accident that occurred at E.R. Collision Company on May 16, 2002. E.R. Collision Company is located in a building, which is owned by Plaintiffs Angelo and Donna DiTullio, at 1021-25 Snyder Avenue in Philadelphia, Pennsylvania. While making a delivery to E.R. Collision, an employee of Defendant Lowe's Companies, Inc. ("Lowe's Companies"), allegedly struck the corner of the building with a forklift.

At the time of the accident, Defendant Universal Underwriters Insurance Company ("Universal") was the insurer of the property. Upon [*3] inspecting the premises, Defendants Lowe's Companies and Universal Underwriters determined that the amount of damage caused by the forklift accident was $ 1500 and that the remaining damage to the building was pre-existing. The insurance policy does not cover pre-existing damage.

Two lawsuits arose out of the dispute over the various parties' liability for the accident. First, on December 4, 2002, Universal Underwriters, which is a Defendant in the instant case, filed an action in this Court against the DiTullios and E.R. Collision Company, seeking a declaratory judgment limiting its liability under the insur-

ance policy. That case is docketed at Civil Action Number 02-08875.

Second, on December 23, 2002, the DiTullios filed the instant case in the Court of Common Pleas for Philadelphia County. In this case, they assert two claims. In Count I of the complaint, the DiTullios assert a negligence claim against Lowe's Companies, alleging, inter alia, that Lowe's Companies failed to properly hire and train the employee who struck their building. See Compl. at 2-3. Although not entirely clear, Count II appears to assert a breach of contract claim against Universal Underwriters for [*4] its failure to pay the compensation allegedly due under the insurance contract. Id. at 4. In their complaint, the DiTullios assert damages "in an amount in excess of" $ 50,000. n2 Id. at 3, 4.

n2 The claims against the two Defendants arise out of the same incident and are intended to compensate for the same injury. Accordingly, Plaintiffs are not seeking damages in excess of $ 50,000 from each Defendant, but rather total damages in that amount.

On January 10, 2003, Defendant Universal Underwriters removed this case from the Court of Common Pleas to this Court. In the removal petition, Universal Underwriters cites two grounds for removal. First, Universal Underwriters asserts, pursuant to *28 U.S.C. § 1332*, that this Court has jurisdiction over the case based on diversity of citizenship jurisdiction. Alternatively, Universal Underwriters asserts that the Court has supplemental jurisdiction over the case, pursuant to *28 U.S.C. § 1367 (a)*, because the case arises [*5] from the same nucleus of facts as the declaratory judgment case currently before the Court, Universal Underwriters Insurance Company v. E.R. Collision Company, docketed at Civil Action Number 02-08875.

**II. LEGAL STANDARD**

A defendant may remove from state court any civil action "of which the district courts of the United States have original jurisdiction." *28 U.S.C. § 1441(a)*. In federal district court, there are two forms of original jurisdiction: (1) diversity and (2) federal question. Diversity jurisdiction occurs when the amount in controversy exceeds $ 75,000 and there is complete diversity among the parties, i.e., no plaintiff is a citizen of the same state as any defendant. *28 U.S.C. § 1332*. Federal question jurisdiction occurs when the plaintiff's well-pleaded complaint states a claim arising under the Constitution, laws, or treaties of the United States. *28 U.S.C. § 1331*. As noted above, Defendants in this case base their removal petition on diversity jurisdiction and supplemental jurisdiction.

This motion to remand is governed by *28 U.S.C. § 1447(c)*, which provides [*6] that a case may be remanded back to state court "if at any time before final judgment it appears that the district court lacks subject matter jurisdiction." *28 U.S.C. § 1447(c)*. When considering a motion to remand, the Court must review the plaintiff's complaint as it appeared when the defendant removed the case from state court. *Steel Valley Auth. v. Union Switch & Signal Div., 809 F.2d 1006, 1010 (3d Cir. 1987)*.

Importantly, the defendant bears the burden of establishing removal jurisdiction. *Boyer v. Snap-On Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990)*. Thus, the defendant must demonstrate that this Court would have had original jurisdiction to hear the matter, i.e., either diversity or federal question jurisdiction. See, e.g., *Winnick v. Pratt, 2003 U.S. Dist. LEXIS 8523, No. Civ.A. 03-1612, 2003 WL 21204467, at *1 (E.D. Pa. May 20, 2003)*; *Miller v. Riddle Mem'l Hosp., 1998 U.S. Dist. LEXIS 7752, No. Civ.A. 98-392, 1998 WL 272167, at *2 (E.D. Pa. May 28, 1998)*. In this circuit, removal statutes are strictly construed against removal, and any doubts are resolved in favor of remand. *Boyer, 913 F.2d at 108* (citing *Steel Valley Auth. v. Union Switch & Signal Div., 809 F.2d 1006, 1010 (3d Cir. 1987))*. [*7]

**III. DISCUSSION**

Defendant asserts two bases of jurisdiction for removal of this case. First, Defendant argues that the Court has diversity jurisdiction over the case because there is complete diversity and the amount in controversy exceeds $ 75,000. See Def.'s Mem. at 2-3. Second, Defendant argues that *28 U.S.C. § 1367*, the supplemental jurisdiction statute, provides federal jurisdiction over the case. See Def.'s Mem. at 3-4. These arguments are discussed in turn below.

**A. Diversity Jurisdiction**

This Court has subject matter jurisdiction over state law claims if there is complete diversity of citizenship among the parties and the amount in controversy exceeds $ 75,000. *28 U.S.C. § 1332*. In the Motion to Remand, Plaintiffs argue that the amount in controversy is less than $ 75,000. To support this contention, Plaintiffs point to their complaint in this action, which merely seeks damages "in excess of $ 50,000." Moreover, Plaintiffs also offer a stipulation, signed by their counsel, indicating that they will not plead or seek to prove damages in excess of $ 75,000. Pls.' Mem. at Ex. B.

In response, Defendant, [*8] which bears the burden of establishing the amount in controversy, essentially

argues that the damages are unclear. Rather than providing evidence of an estimated amount in controversy, Defendant points to inconsistencies in the Plaintiffs' pleadings. Specifically, Defendant compares the attachments to Plaintiffs' complaint, which contain invoices estimating damages at approximately $ 35,000, with the specific Counts of the complaint, which seek damages in excess of $ 50,000. From these inconsistencies, Defendant states that "allegations that damages are only approximately $ 34,000 makes one question the allegation of why [sic] damages are alleged to be in excess of $ 50,000." Def.'s Mem. at 3.

In evaluating the amount in controversy requirement, this Court does not look to the low end of an open-ended claim, but rather conducts "a reasonable reading of the value of the rights being litigated." *Werwinski v. Ford Motor Co., 286 F.3d 661, 666 (3d Cir. 2002)* (citing *Angus v. Shiley, Inc., 989 F.2d 142, 146 (3d Cir. 1993))*. To conduct this review, the Court looks first to the complaint and then to any materials which may help clarify the damages. [*9] See *Angus, 989 F.2d at 145, n.3* (stating additional materials must clarify rather than amend claim). If the complaint does not limit itself to a precise damages amount, then the Court may conduct an independent appraisal of the claim. *Id. at 146*.

Because the United States Court of Appeals for the Third Circuit has not delineated the standard applied when the complaint seeks unliquidated damages, courts in this circuit have applied several different tests. See *Chaparro v. State Farm Ins. Co., 1999 U.S. Dist. LEXIS 16428, No. Civ.A. 99-2063, 1999 WL 961035, at *2-4 (E.D. Pa. Oct. 12, 1999)* (collecting cases); Charles A. Wright et al., Federal Practice & Procedure § 3725, at 89-93 (3d ed. 1998 & Supp. 2003) (describing four distinct tests). First, the most stringent standard applied is the "legal certainty" test, which requires a defendant to prove the amount in controversy requirement "to a legal certainty." See, e.g., *Samuel-Bassett v. Kia Motors Am., Inc., 143 F. Supp. 2d 503, 506 (E.D. Pa. 2002)*. Second, some courts have applied a preponderance of the evidence standard. See, e.g., *Wilbur v. H & R Block, Inc., 170 F. Supp. 2d 480, 483 (E.D. Pa. 2000)*. [*10] Third, other courts require a defendant to demonstrate "some reasonable probability" that the damages exceed $ 75,000. See, e.g., *Hayfield v. Home Depot U.S.A., Inc., 168 F. Supp. 2d 436, 454 (E.D. Pa. 2001)*. Finally, the most lenient standard applied is the "inverted legal certainty test," which requires the defendant merely to show that it does not appear to a legal certainty that the damages are less than the amount in controversy. See, e.g., *Michael F. Ronca & Sons, Inc. v. Monarch Water Sys., Inc., 1990 U.S. Dist. LEXIS 12660, No. Civ.A. 90-5029, 1990 WL 140154, at *3 (E.D. Pa. Sept. 24, 1990)*. In this case, the outcome is the same regardless of which test is applied.

Because Defendant cannot meet the burden under the inverted legal certainty test, which is the most lenient of the tests used in this circuit, the Court finds that the amount in controversy requirement is not satisfied. Under this test, the Court must be convinced to a legal certainty that the Plaintiff cannot recover the jurisdictional amount. *St. Paul Mercury Indem. Co. v. Red. Cab Co., 303 U.S. 283, 288-89, 58 S. Ct. 586, 590, 82 L. Ed. 845 (1938)*. Put another way, the burden is [*11] on Defendant to prove that there is a legal uncertainty as to whether Plaintiffs' claim will exceed the amount in controversy requirement. See Wright, et al., supra, § 3725, at 91-92. In this case, the attachments to Plaintiffs' complaint indicate total damages of approximately $ 35,000. Additionally, Plaintiffs filed a stipulation, signed by Plaintiffs' counsel, clarifying that they will not plead or seek to prove damages in excess of $ 75,000. Finally, the complaint itself states only that the damages exceed $ 50,000. Because nothing in these documents, nor any evidence presented by Defendant, indicates that the damages in this case even approach the $ 75,000 jurisdictional amount, Defendant has not met its burden of establishing that there is a legal uncertainty as to whether the jurisdictional amount will be met in this case.

Moreover, in *Meritcare, Inc. v. St. Paul Mercury Ins. Co., 166 F.3d 214, 222-23 (3d Cir. 1999)*, the United States Court of Appeals for the Third Circuit affirmed the remand of a case with facts similar to the instant case. In Meritcare, three corporate plaintiffs sued their property insurer in state court, seeking damages resulting [*12] from the collapse of the roof at their place of business. *166 F.3d at 216*. In their complaint, the plaintiffs sought damages "exceeding $ 25,000." *Id.* n3 In a Pre-Trial Memorandum, one plaintiff conceded that its claim was worth less than $ 5,000. *Id. at 222*. The Third Circuit, examining the plaintiff's concession and the record, severed the plaintiff's claims and remanded its case to state court. *Id. at 223*. Similarly, in this case, Plaintiffs' complaint, which seeks damages "in excess of $ 50,000," coupled with Plaintiffs' stipulation that it will not seek to prove more than $ 75,000 in damages, requires that this case be remanded to Pennsylvania state court.

n3 At the time that the Meritcare case was removed to federal court, the amount in controversy requirement was $ 50,000. *166 F.3d at 216, n. 2*.

**B. Supplemental Jurisdiction**

In the alternative, Defendant purports to base its removal petition on the supplemental jurisdiction statute, *28 U.S.C. § 1367* [*13] *(a)*. Def.'s Mem. at 3-4. As noted above, another suit between these parties is currently pending before this Court. According to Defendant, because these two actions are so closely related, the supplemental jurisdiction statute serves as an independent basis for removal of the instant case. Because removal is only appropriate where the district court could have exercised original jurisdiction over the state law claims, rather than supplemental jurisdiction, Defendant's argument fails.

*Section 1367* provides federal district courts with the discretionary authority to hear state law claims which would ordinarily not be within the federal court's jurisdiction. *28 U.S.C. § 1367(a)*. The state law claims must share a common nucleus of operative fact with a claim that falls under the federal court's original jurisdiction. *United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725, 86 S. Ct. 1130, 1138, 16 L. Ed. 2d 218 (1966).*

It is well-settled, however, that supplemental jurisdiction is not an independent source of removal jurisdiction. See, e.g., *Henson v. Ciba-Geigy Corp., 261 F.3d 1065, 1068, n.3 (11th Cir. 2001)*; *Ahearn v. Charter Township of Bloomfield, 100 F.3d 451, 456 (6th Cir. 1996)*; [*14] *In re Estate of Tabas, 879 F. Supp. 464, 467 (E.D. Pa. 1995)*; see also Wright et al., supra, § 3722, at 384-85, n.7. State law claims may not be removed to federal court solely because there is a pending federal case that arises out of a common nucleus of operative fact with the state action. *Tabas, 879 F. Supp. at 467*; Wright, et al., supra, § 3722 at 385. Rather, to remove a case from state court to federal court, a federal claim must exist within the removal petition itself. *Tabas, 879 F. Supp. 2d at 467*. No such federal claim is present in the instant removal petition. Accordingly, this case must be remanded to Pennsylvania state court.

**IV. CONCLUSION**

Defendant bases its removal petition on diversity jurisdiction or, in the alternative, supplemental jurisdiction. First, because the amount in controversy requirement is not satisfied, this Court does not have diversity jurisdiction over this case. Second, it is axiomatic that supplemental jurisdiction cannot serve as an independent basis for removal of state law claims to federal court. Accordingly, Defendant has not carried its burden of establishing that [*15] the case is removable. Thus, the case is remanded to the Court of Common Pleas for Philadelphia County.

An appropriate Order follows.

**ORDER**

AND NOW, this 6th day of June, 2003, upon consideration of Plaintiffs' Motion to Remand (Docket No. 2) and Defendant Universal Underwriters Insurance Company's Petition to Consolidate (Docket No. 12), IT IS HEREBY ORDERED that:

(1) Plaintiffs' Motion to Remand (Docket No. 2) is **GRANTED;**

(2) Defendant Universal Underwriters Insurance Company's Petition to Consolidate (Docket No. 12) is **DENIED AS MOOT;** n4 AND

(3) This case is **REMANDED** to the Court of Common Pleas for Philadelphia County.

n4 Because the instant case is remanded to state court, Defendant's Petition to Consolidate the instant case with Universal Underwriters Insurance Company v. E.R. Collision Company, No. Civ.A. 02-8875, is moot.

BY THE COURT:

HERBERT J. HUTTON, J.

Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Court of Chancery of Delaware.
DELAWARE SOLID WASTE AUTHORITY, a body politic and corporate constituting a public instrumentality of the State of Delaware, Plaintiff,
v.
EASTERN SHORE ENVIRONMENTAL, INC., a Delaware corporation, Defendant.
**No. CIV.A. 1472-K.**

Submitted: Dec. 17, 2001.
Decided: March 28, 2002.

Waste authority brought lawsuit against waste management company for order enjoining company from operating dry and municipal solid waste transfer station located on unincorporated county property. Company moved to dismiss lawsuit. The Chancery Court, Kent County, held that: (1) authority did not have standing to bring suit against company under provision of statute permitting suits to prevent buildings to be constructed in violation of county zoning laws or regulations; (2) company did not violate provision in Deceptive Trade Practices Act providing remedy for advertising which created likelihood of confusion concerning trademarks or trade names; (3) company did not violate provision in Act providing remedy for advertising which dealt with false advertising of goods, services or businesses; (4) company did not violate provision in Act providing remedy against new kinds of deceptive trade practices; and (5) authority did not adequately pled elements of unfair competition claim against company.

Motion to dismiss granted.

West Headnotes

**[1] Zoning and Planning 761**
414k761 Most Cited Cases
Waste authority did not have standing to bring suit against competitor waste management company under provision of statute permitting suits to prevent buildings to be constructed in violation of county zoning laws or regulations, where statute conditioned standing to sue on ownership of real estate in district, and company's waste transfer site at issue in lawsuit was in I-G zoning district classification in county, but authority owned real estate outside I-G zoning district, though also on unincorporated county land. 9 Del.C. § 4919(b).

**[2] Zoning and Planning 761**
414k761 Most Cited Cases
Case law did not entitle any county resident to sue to redress zoning violation under statute permitting suits to prevent buildings to be constructed in violation of county zoning laws or regulations, without regard to whether resident resided within the same zoning district as the defendant. 9 Del.C. § 4919(b).

**[3] Trade Regulation 870(1)**
382k870(1) Most Cited Cases
Waste management company did not violate provision in Deceptive Trade Practices Act providing remedy for advertising which created likelihood of confusion concerning trademarks or trade names, where competitor waste authority did not claim that company used false or misleading trademarks or service marks, but rather that advertising was deceptive and misleading because embedded within each of company's advertisements was implied representation that company was operating with appropriate county zoning approvals, where under no set of circumstances would company's alleged violation of zoning ordinance be likely to produce confusion among consumers caused by use of trademark or trade name. 6 Del. C. § § 2532(a)(2), (3).

**[4] Trade Regulation 870(1)**
382k870(1) Most Cited Cases
Waste management company did not violate provision in Deceptive Trade Practices Act providing remedy for advertising which dealt with false advertising of goods, services or businesses, where competitor waste authority did not specify any particular advertisement that it claimed was explicitly false, but only that company could legally operate in county, a status that was in contention at time claim was brought; ruling for authority would mean that whenever any company was charged with having violated any legal requirement, that alleged violation, unless disclosed, would constitute a deceptive trade

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

practice. 6 Del. C. § 2532(a)(5).

[5] **Trade Regulation 870(1)**
382k870(1) Most Cited Cases
Waste management company did not violate provision in Deceptive Trade Practices Act providing remedy against new kinds of deceptive trade practices, where theory that company was not disclosing to its customers that it was involved in zoning dispute over waste transfer station, even though company was presently operating transfer station lawfully, did not allege deceptive advertising in any legally meaningful sense. 6 Del. C. § 2532(a)(12).

[6] **Trade Regulation 564**
382k564 Most Cited Cases
Waste authority did not adequately plead elements of unfair competition claim against competitor waste management company in connection with company's alleged operation of transfer station in violation of zoning ordinances, where even if company did solicit authority's customers, as alleged, authority had not pled facts that would establish that company's conduct was "wrongful" or "malicious;" general assertion that company's conduct was willful and malicious was not supported by any specifically pled facts.

F. Michael Parkowski and Mark F. Dunkle, Esquires of Parkowski & Guerke, P.A., Dover, Delaware; Attorneys for Plaintiff.

William E. Manning, Richard A. Forsten and Francis X. Gorman, Esquires of Klett Rooney Lieber & Schorling, Wilmington, Delaware; Attorneys for Defendant.

MEMORANDUM OPINION

JACOBS, Vice Chancellor.

*1 The plaintiff, Delaware Solid Waste Authority ("DSWA"), has brought this lawsuit against defendant Eastern Shore Environmental, Inc. ("Eastern Shore"), for an order enjoining Eastern Shore from operating a dry and municipal solid waste transfer station (the "transfer station") located on a property in unincorporated Kent County, Delaware (the "property"). DSWA asserts three claims. In Count I, DSWA claims that Eastern Shore's operation of the transfer station violates *6 Del. C.* § § 2531-2536, which prohibits certain deceptive trade practices. In Count II, DSWA claims that Eastern Shore's operation of the transfer station violates the Kent County Zoning Ordinance. And in Count III, DSWA claims that Eastern Shore is engaging in unfair competition. [FN1]

FN1. Count IV is a claim for an award of attorney's fees.

Eastern Shore has moved to dismiss the complaint in its entirety. For the reasons set forth below, Eastern Shore's motion is meritorious and will be granted.

I. FACTS

The facts recited below are derived from the well-pled allegations of the complaint. [FN2] On July 3, 2000 the Delaware Department of Natural Resources and Environmental Control ("DNREC") issued a permit authorizing Eastern Shore to operate the transfer station. The DNREC permit authorized the processing (*i.e.,* dumping, washing, sorting and hauling away) of 160 tons per day, and as much as 192,400 tons per calendar year, of various kinds of municipal waste. [FN3]

FN2. *Weinberger v. UOP, Inc.,* 409 A.2d 1262, 1263-64 (Del.Ch.1979).

FN3. Before the permit was issued DNREC had authorized the processing of only smaller volumes of dry waste. In 1999, for example, the transfer station processed only 18,648 tons of dry waste.
DSWA claims that the transfer station contains "pathogens ... and offensive odors," and "disease, water resource contamination, pest control, noise, road damage, unacceptable levels of traffic and other health and safety concerns." Complaint ¶ ¶ 5, 9. Although extensively discussed in the complaint, the effect of the transfer station on the health and safety of the community at large is not at issue in this action, and this Court is not required to consider those concerns for the purposes of this motion.

Contrary to the representations Eastern Shore made in its application for a DNREC permit, a transfer station is not a permitted use of the property under the property's current zoning--I-G (Industrial). To operate a transfer station under the property's current zoning, Eastern Shore was required to apply for a conditional use permit from Kent County (the "County"). [FN4] The relevant application process includes two public hearings, a submission of the transfer station site plan to the Regional Planning Commission, and a review of the site plan by the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Kent County Development Advisory Committee agencies. [FN5] Eastern Shore, however, has never undergone any of those public-hearing procedures, nor has it ever obtained conditional use approval. [FN6]

FN4. *Kent County, Del., Zoning Ordinance* art. 6, § 5.103.

FN5. *Id.* at art. 9, § 7.

FN6. Nor has any previous owner of the property ever obtained conditional use approval for a transfer station from the County.

In a letter dated July 12, 2000, the Kent County Planning Director, Constance Holland, notified Eastern Shore that to comply with the County Zoning Ordinance its transfer station required conditional use site plan approval. Eastern Shore made no effort to apply for such approval, however. Instead, it brought a related lawsuit against the County for injunctive relief and monetary damages. [FN7]

FN7. *Eastern Shore Envtl. v. Kent County Dep't of Planning,* C.A. No. 1464-K. That case is currently pending before this Court.

DSWA, the plaintiff, is a public instrumentality of the State of Delaware. Because it owns and operates a solid waste transfer station in unincorporated Kent County, DSWA is a direct competitor of Eastern Shore.

II. THE ISSUES AND CONTENTIONS

DSWA seeks to enjoin Eastern Shore's use of the transfer station under three distinct theories. First, DSWA claims that Eastern Shore has violated the Delaware Deceptive Trade Practices Act, 6 *Del. C.* § § 2531-2536, in that Eastern Shore's advertisements are likely to confuse and deceive the public into believing that Eastern Shore has obtained the necessary County regulatory approval to operate its transfer station, when in fact that is not the case. Eastern Shore responds that the Act applies primarily to deceptive advertising claims caused by the misuse of a trademark or trade name. Because DSWA's claim does not involve a trademark or trade name, and because no legal authority supports DSWA's claim that a regulatory dispute must be disclosed in a company's advertisements or else be deemed a deceptive trade practice, Eastern Shore argues that DSWA's claim must be dismissed. I find that Eastern Shore's contention has merit.

***2** Second, DSWA is seeking to bring a private enforcement action under 9 *Del. C.* § 4919(b), which allows certain property owners to enforce a county zoning law or regulation against any property owner located within the same district. The only issue on this motion is whether DSWA has standing to sue under Section 4919(b). DSWA contends that any owner of property located within unincorporated Kent County has standing to sue under that Section. Eastern Shore argues, however, that the statute permits suits only by persons who own property situated within the specific zoning district where the offending property is located. I agree with Eastern Shore's interpretation of Section 4919(b), and thus conclude that DSWA does not have standing under that Section.

Third, DSWA claims that Eastern Shore is engaging in unfair competition with DSWA because it is soliciting DWSA's customers to use the transfer station that Eastern Shore is currently operating without the proper regulatory approval. Eastern Shore responds that DSWA has failed to state a legally cognizable claim of unfair competition. Again, and for the reasons discussed *infra,* I agree.

The basis for my conclusions is next discussed.

III. ANALYSIS

A. Does DSWA Have Standing to Enforce a Zoning Regulation Under 9 *Del. C.* § 4919(b)?

1. *DSWA Lacks Standing to Bring Suit Under 9 Del. C. § 4919(b)*

[1] In Count II, DSWA seeks relief under 9 *Del. C.* § 4919(b). The issue presented is whether DSWA has standing to bring suit under that provision. I conclude that it does not.

Section 4919(b) authorizes certain persons (including private parties) to bring suit in order to "prevent, enjoin, abate or remove" any building or structure that is "proposed to be erected, constructed, reconstructed, altered, maintained or used" in violation of a county zoning law or regulation. The persons entitled to bring suit under the statute are: (i) the County and (ii) "an owner of real estate [located] *within the district* in which such building, structure or land is situated." [FN8] Thus, unless DSWA is the "owner of real estate within the district," it has no standing to sue under Section 4919(b).

FN8. 9 *Del. C.* § 4919(b) (emphasis added).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Eastern Shore argues that "district" refers to a specific zoning classification district designated by the County. That is, the County is statutorily authorized to divide itself into specifically zoned areas, which are referred to in the statute as "districts." That being the case, Eastern Shore argues, only those persons who own property within the I-G zoning district in Kent County may bring an enforcement action against Eastern Shore, and DSWA is not such a property owner. [FN9]

FN9. Eastern Shore is the only owner of property within that zoning district.

DSWA disputes that interpretation. It argues that "district" means *all* of unincorporated Kent County. As a consequence, any person who owns property situated in unincorporated Kent County would have standing to bring an enforcement action under Section 4919(b). DSWA's argument runs as follows: (i) The term "district" is used ambiguously in Chapter 49 of the Delaware Code; (ii) in Chapter 48, however, "district" is defined as "the Regional Planning District of Kent County," [FN10] which encompasses "that portion of Kent County which is not included within the corporate limits of any city or town." [FN11] Thus, under Chapter 48, "district" means all of unincorporated Kent County. From that premise DSWA next argues that (iii) because this Court has held that Chapters 48 and 49 must be read *in pari materia,* [FN12] the term "district" as used in Chapter 49 must be interpreted consistent with the meaning in Chapter 48. Therefore, DSWA concludes, (iv) because DSWA owns property in unincorporated Kent County, it has standing to bring this enforcement action under Section 4919(b).

FN10. 9 *Del. C.* § 4801(5).

FN11. *Id.* § 4802.

FN12. *Scarborough v. Mayor and Council of Cheswold,* 303 A.2d 701, 706 (Del.Ch.1973) ("[Chapters 48 and 49] are *in pari materia,* treating the same general subject, and reference may be made to the one in construing the other."); *see also Coastal Barge Corp. v. Coastal Zone Indus. Control Bd.,* 492 A.2d 1242, 1245 (Del.1985) ("A statute is passed by the General Assembly as a whole and not in parts or sections. Consequently, each part or section should be read in light of every other part or section to produce a harmonious whole.").

*3 The difficulty with this argument is that DSWA's definition of "district" as encompassing all of unincorporated Kent County conflicts with the meaning of "district" as that term is used elsewhere in Chapter 49. That is, as used elsewhere in Chapter 49, "district" means the zoning classification district designated by the County. Section 4902, for example, states that "the county government may divide the territory of Kent County into *districts* or zones ... and within such *districts* ... may regulate the erection, construction, reconstruction, alterations and uses of buildings and structures and the uses of land." [FN13] Section 4911, which is entitled "changes in zoning *district;* plan or regulation; procedure," provides that the "county government may, from time to time, make amendments ... with respect to the number, shape, boundary or area of any *district or districts.*" [FN14] Thus, in those Sections, "district" means a divided area of Kent County where the County regulates land use. Consequently, "district" cannot mean all of unincorporated Kent County without ignoring the actual language of Chapter 49 and producing an absurd reading of that Chapter. [FN15]

FN13. 9 *Del. C.* § 4902 (emphasis added).

FN14. *Id.* § 4911 (emphasis added).

FN15. *See Snell v. Eng'd Sys. & Designs, Inc.,* 669 A.2d 13, 20 (Del.1995) (holding that courts should interpret statutes to achieve a common sense result and to avoid unreasonable or absurd results). Furthermore, "district," a defined term, is always capitalized in Chapter 48, but is never capitalized in Chapter 49. The purposeful capitalization of "district" throughout Chapter 48 is evidence of the General Assembly's intent to give the same term different meanings in each Chapter.

Because DSWA has not shown that it owns property "within the [same] district" as Eastern Shore's transfer station, DSWA has no standing to assert its claim under Section 4919(b).

2. *Delaware Case Law Does Not Give DSWA Standing to Sue Under 9 Del. C. § 4919(b)*

[2] DSWA next argues that *Scarborough v. Mayor and Council of Cheswold* [FN16] entitles any County resident to sue to redress a zoning violation

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

under Section 4919(b), regardless of whether that plaintiff resided within the same zoning district as the defendant. DSWA misreads *Scarborough,* however.

FN16. 303 A.2d 701 (Del.Ch.1973).

In *Scarborough,* the plaintiffs were residents of the town of Cheswold who sought to enjoin the construction of a drive-in theater within that town. After the lawsuit commenced, the parties discovered that Cheswold had never properly adopted *any* zoning regulations. The plaintiffs then argued that because Cheswold had not adopted its own zoning regulations, zoning issues pertinent to the town should be governed by the Kent County Zoning Ordinance. Because Kent County failed to provide specifically for any zoning regulations for the town, the County Zoning Ordinance mandated that the town be zoned A-C (Agriculture-Conservation) by default. That zoning classification prohibited the drive-in theater from being built. [FN17]

FN17. That is, the plaintiffs were arguing that the County was statutorily bound to regulate zoning within Cheswold, but had failed to do so. Under the County Zoning Ordinance, if the County fails to provide zoning for a property within its jurisdiction, that property will be classified A-C. *Scarborough,* 303 A.2d at 705 (citing *Kent County, Del., Zoning Ordinance* art. 1, § 4). Under 9 *Del. C.* § 4901, Kent County may apply its own Zoning Ordinance to municipalities that have no zoning code, at the request of the municipality. Cheswold never made such a request.

The *Scarborough* Court first addressed the defendants' procedural argument that if the Kent County Zoning Ordinance applied, the plaintiffs were obligated to follow the administrative zoning procedures and appeal to the County Board of Adjustment. The Court ruled that the plaintiffs were entitled to seek relief under § 4919(b), without addressing the issue of whether the plaintiffs owned property in the same district as the drive-in theater. DSWA contends that because the Court held that the plaintiffs were found to be entitled to proceed, *Scarborough* must be viewed as holding that any property owner of Kent County has standing to bring suit under Section 4919(b).

*4 Although the *Scarborough* Court allowed the plaintiffs to sue under Section 4919(b), it did not do so on the basis that any Kent County property owner had standing to bring an enforcement action under Section 4919(b). Rather, the holding in *Scarborough* is consistent with Eastern Shore's interpretation of the word "district." In *Scarborough,* there were two possible outcomes: (i) no zoning regulations applied to Cheswold, in which case the suit would be dismissed because without any zoning regulations there could be no zoning violation; or (ii) the entire town was subject to the Kent County Zoning Ordinance, in which case all of Cheswold would be zoned A-C (Agriculture-Conservation). Therefore, by allowing the suit to go forward, the Court implicitly held that *if* the Kent County Zoning Ordinance applied to Cheswold (as the plaintiffs argued), the plaintiffs would have standing to sue under Section 4919(b) because the entire town would be zoned entirely as Agriculture-Conservation, [FN18] and the plaintiffs owned property within the same district as the drive-in theater. Because *Scarborough* does not compel the conclusion that DSWA advocates, it does not support DSWA's standing to seek enforcement of the Kent County Zoning Ordinance.

FN18. The Court ultimately held that the Kent County Zoning Ordinance did not apply to Cheswold, and therefore, the case was dismissed. *Scarborough,* 303 A.2d at 708.

B. Has Eastern Shore Violated the Delaware Deceptive Trade Practices Act?

[3] DSWA's next claim is that Eastern Shore has violated the Delaware Deceptive Trade Practices Act, 6 *Del. C.* § § 2531-2536 (the "Act"). The complaint alleges violations of subsections 2532(a)(2), (a)(3), (a)(5) and (a)(12) of the Act, which state:

(a) A person engages in a deceptive trade practice when, in the course of a business, vocation, or occupation, that person:

* * *

(2) Causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

(3) Causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another;

* * *

(5) Represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have, or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

have;

* * *

(12) Engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

The Act "codifies [the 1964] Uniform Deceptive Trade Practices Act [ (the "Uniform Act") ], which in turn, codifies the common law of unfair competition." [FN19] To understand the scope of the Act, it is helpful to review the pertinent Delaware case law, and also the text and related Comments of the Uniform Act.

FN19. *Young v. Joyce,* 351 A.2d 857, 859 (Del.1975).

The Uniform Act was intended to provide a remedy "to persons likely to suffer pecuniary harm for conduct involving either misleading identification of business or goods or false or deceptive advertising." [FN20] The Uniform Act thus encompasses two broad areas: (i) false or misleading use of trademarks or other trade identification and (ii) deceptive advertising.

FN20. *Unif. Deceptive Trade Practices Act,* prefatory note (1964).

*5 DSWA does not claim that Eastern Shore used false or misleading trademarks or service marks. Rather, its claim is that Eastern Shore's advertising is deceptive and misleading because embedded within each of Eastern Shore's advertisements [FN21] is an implied representation that Eastern Shore is operating with the appropriate County zoning approvals. Because Eastern Shore is not operating with the appropriate County zoning approvals, members of the public (*i.e.,* present and future Eastern Shore customers) are being misled to believe that Eastern Shore is operating its transfer station legally.

FN21. Eastern Shore has placed advertisements for its services in various publications, including the Bell Atlantic Yellow Pages.

Although DSWA's claim is of an "implied misrepresentation" is novel, it unfortunately finds no legal justification in the Uniform Act or Delaware case law for the reasons next discussed. [FN22]

FN22. DSWA argues that the Uniform Act is based upon the Lanham Act, and then proceeds to argue that Eastern Shore's advertising practices violate the Lanham Act. The Lanham Act is not the Uniform Act, however, and DSWA has cited no authority adequate to support its proposition that the Uniform Act is based on the Lanham Act, or that a possible violation of the Lanham Act would also be a violation of the Uniform Act. Because DSWA has not brought a claim under the Lanham Act, this Court will not consider whether Eastern Shore's conduct has violated that Act.

1. *DSWA's Claim Under 6 Del. C. § § 2532(a)(2) and (a)(3)*

First, DSWA's claims under Sections 2532(a)(2) and (a)(3) of the Act are not legally cognizable. The Comments to the Uniform Act state that claims brought under those Sections--which use a "likelihood of confusion" standard-- are to be based on the "approval, endorsement, or certification of goods or services caused by *trademarks, service marks, certification marks, or collective marks* likely to be associated with preexisting trade symbols," [FN23] or by "misleading *trade names.*" [FN24]

FN23. *Unif. Deceptive Trade Practices Act* § 2(a)(2), cmt. (emphasis added).

FN24. *Id.* § 3(a)(2), cmt. (emphasis added).

The difficulty is that even if DSWA's claims are assumed to be factually true, under no set of circumstances would Eastern Shore's alleged violation of County Zoning Ordinance (and any related misrepresentation on its DNREC application) be likely to produce confusion among consumers *caused by the use a trademark or a trade name.* DSWA has cited no authority supporting its argument that misrepresentations in advertising that are related to a zoning violation are actionable under Sections 2532(a)(2) and (a)(3). DSWA's claims under those statutory provisions are not legally cognizable and must be dismissed.

2. *DSWA's Claim Under 6 Del. C. § 2352(a)(5)*

[4] Similarly defective is DSWA's claim under 9 *Del. C.* § 2353(a)(5), which "deals with false advertising of goods, services or businesses." [FN25] In its complaint DSWA does not specify any particular advertisement that it claims is *explicitly* false. Rather, DSWA contends that all of Eastern Shore's advertising falsely *implies* that Eastern Shore

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

"can legally operate in Kent County." [FN26] Specifically, DSWA argues that "[b]y failing to disclose Kent County's objection, Eastern [Shore] falsely conveys to its potential customers, and in particular, the City of Milford, that it can legally provide the waste hauling services that it solicits." [FN27] I find this claim legally insufficient.

FN25. *Id.* § 2(a)(5), cmt.

FN26. DSWA Ans. Br. at 17.

FN27. *Id.* at 18.

One major problem with this claim is Eastern Shore's position that it is operating legally. Eastern Shore has filed an action in this Court against Kent County to establish its right to operate the transfer station, [FN28] and the County has indicated that it will take no enforcement action against Eastern Shore during the pendency of the litigation. [FN29] Furthermore, no zoning violation has been determined by any competent tribunal. Those being the circumstances, on what basis can it be claimed that there is "implicit falsity" in Eastern Shore's advertisements? It would be an odd result if this Court were to announce a rule that when a dispute arises over a company's permit to operate and while the dispute is pending the company is permitted to operate, the company has a duty to disclose the existence of the dispute in all its advertisements, or else be found to have committed a deceptive trade practice. Such a rule, taken to its logical conclusion, would mean that whenever a company is charged with having violated any legal requirement, that alleged violation, unless disclosed, would constitute a deceptive trade practice. DSWA has cited no authority that supports that interpretation of our statute. Even assuming the truth of DSWA's well-pled facts, Eastern Shore's mere advertisement of its services, at a time it is claimed to be in violation of a County zoning ordinance, cannot constitute a deceptive trade practice under the Act.

FN28. *Eastern Shore Envtl. v. Kent County Dep't of Planning,* C.A. No. 1464-K.

FN29. Eastern Shore Reply Br. at Ex. A (oral argument transcript).

3. *DSWA's Claim Under Section 9 Del. C. § 2532(a)(12)*

***6** [5] DSWA's claim under Section 2532(a)(12) is similarly defective. That Section prohibits "any other conduct which similarly creates a likelihood of confusion or misunderstanding." The intent of Section 2532(a)(12) is to enable courts to prevent "new kinds of deceptive trade practices." [FN30] By asserting a claim under this Section, DSWA is asking this Court to find that Eastern Shore has engaged in a "new kind of deceptive trade practice," namely, not disclosing to its present and potential customers that it is involved in a zoning dispute over the transfer station, even though Eastern Shore is presently operating the transfer station lawfully. Again, DSWA cites no authority and makes no reasoned argument that would persuade this Court to find that such advertising is deceptive, or that it creates "a likelihood of public deception" [FN31] in any legally meaningful sense. The Act ought not to be used as a backdoor way for a party to enforce the County Zoning Ordinance indirectly, where that same party would have no standing to enforce the Zoning Ordinance directly. Therefore, DSWA's claim under the Act also fails.

FN30. *Unif. Deceptive Trade Practices Act* § 2(a)(12), cmt.

FN31. *Id.*

C. Has DSWA Stated a Claim for Unfair Competition?

[6] Lastly, DSWA claims that Eastern Shore has engaged in unfair competition by operating "a transfer station without conditional use approval, and [by soliciting] DSWA's customers [causing] DSWA to lose or be threatened to lose its current business." [FN32] DSWA also claims that Eastern Shore's conduct was "willful, malicious and without regard to the consequence of its actions." [FN33] In short, DSWA claims that Eastern Shore engaged in unfair competition by: (i) operating without proper zoning approval where DSWA, its competitor, is in compliance with the County zoning regulations and (ii) soliciting DSWA's customers.

FN32. Compl. ¶ 35.

FN33. *Id.* ¶ 36. In its answering brief, DSWA argues that Eastern Shore "solicited the City of Milford's business and in turn the City of Milford terminated its contractual relationship with DSWA before the end of the contract." DSWA Ans. Br. at 19.

To state a claim for unfair competition, the plaintiff must allege that it has a reasonable expectancy of entering a valid business relationship with which the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

defendant wrongfully interferes, thereby defeating the plaintiff's legitimate expectancy and causing the plaintiff harm. [FN34] "Only wrongful interferences will satisfy the tort, as some interferences are seen as justified or privileged under the aegis of competition.... Unfair competition, which is not privileged, includes fraud, intimidation, or disparagement." [FN35]

FN34. *Rypac Packaging Mach. Inc. v. Coakley,* 2000 WL 567895, at * 8 (Del.Ch.) (citing *Int'l Bus. Machs. Corp. v. Comdisco,* Inc., 1993 WL 259102 (Del.Super.Ct.)).

FN35. *Int'l Bus. Machs. Corp.,* 1993 WL 259102, at *22.

Given the applicable legal standard, DSWA has not adequately pled the elements of an unfair competition claim. Even if DSWA's pled facts are assumed to be true, DSWA's claim is that Eastern Shore (i) willfully misrepresented on DNREC permit application that the property could be used as a transfer station as currently zoned, [FN36] and then (ii) "solicited customers of DSWA and commenced doing business with those customers." [FN37] But even if Eastern Shore did solicit DSWA's customers, DSWA has not pled facts that would establish that Eastern Shore's conduct was "wrongful" or "malicious." DSWA does assert that Eastern Shore's conduct generally was willful and malicious, but this conclusory assertion is not supported by any specific pled facts.

FN36. Compl. ¶ 10. As noted above, it is undisputed that Eastern Shore is currently legally entitled to operate the waste transfer station during this litigation, and the transfer station is currently operating under a valid permit from the DNREC.

FN37. *Id.* ¶ 19.

*7 It follows that DSWA's claim--that Eastern Shore fraudulently or wrongfully interfered with DSWA's contractual relationship--is not supported by its pleadings. Even DSWA's cited cases require a plaintiff to "plead with particularity sufficient facts to support a claim of malicious interference with contract." [FN38] The only fact properly pled here is that Eastern Shore solicited DSWA's customers--an act that without more cannot amount to a malicious interference with a contract. A bald assertion of maliciousness without supporting allegations of fact will not sustain an unfair competition claim. [FN39] DSWA's unfair competition claim must therefore be dismissed. [FN40]

FN38. *Elder v. El Di, Inc.,* 1997 WL 364049, at *14 (Del.Super.Ct.). *Elder* specifically addresses a claim for malicious interference with contractual relationships, and DSWA frames its unfair competition claim as such. *See, e.g.,* Compl. ¶ ¶ 35, 37 (alleging a malicious interference with DSWA's relationship with its customers); DSWA Ans. Br. at 19 (arguing Eastern Shore intentionally interfered "with the performance of an existing contract."). In any event, those two claims are treated in a similar (though not identical) manner in Delaware. *Int'l Bus. Machs. Corp.,* 1993 WL 259102, at *21.

FN39. *See, e.g., Elder v. El Di, Inc.,* 1997 WL 364049, at *14 ("In his complaint, [the plaintiff] has asserted with sufficiency that [the defendant] knowingly and intentionally interfered with [the plaintiff's] lease agreements without justification ...."); *Regal Home Distributors v. Gordon,* 66 A.2d 754, 755 (Del.Super.Ct.1949) ("The improper means [of obtaining a contract from a competitor's customer] stated in the complaint consist of statements by defendant relating to plaintiff's secret connection with another corporation of which its customers would not have approved and (2) imputations of plaintiff's financial irresponsibility. The complaint fails to allege that the statements were false [and therefore summary judgment will be granted].)."

FN40. There is also no authority to support DSWA's claim that operating a business while in violation of a regulation constitutes unfair competition. Indeed, at least one case in Delaware can be reasonably read to hold the opposite. *See Delaware Optometric Corp. v. Sherwood,* 128 A.2d 812 (Del.1957) (holding that a licensed optometrist could not enjoin an unlicensed person from practicing optometry under the licensing statute).

V. CONCLUSION

For the above reasons, Eastern Shore's motion to dismiss DSWA's complaint is granted. IT IS SO ORDERED.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.